STATE of Maine

v.

Dale THIBEAULT.

Supreme Judicial Court of Maine.

May 25, 1979.

David M. Cox, Dist. Atty., Gary F. Thorne, Asst. Dist. Atty. (orally), Bangor, for plaintiff.

Anderson & Norton by James F. Cox (orally), Bangor, for defendant.

Before McKUSICK, C. J., and POMER-
OY, ARCHIBALD, DELAHANTY, and
GODFREY, JJ.

DELAHANTY, Justice.

A Superior Court jury, Penobscot County, found Dale Thibeault guilty of Class B burglary. 17–A M.R.S.A. § 401(B). On April 24, 1978, Thibeault was sentenced to a term of six years at the Maine State Prison. On appeal, the defendant attacks the legality of his conviction on numerous grounds. With one exception, we find the defendant's assignments of error to be unfounded. We do find, however, that the presiding Justice's instruction covering the elements of the crime of burglary was prejudicially incorrect, and on that basis we sustain the appeal and remand the case for a new trial.

The prosecution introduced ample evidence tending to show that on the evening of December 9, 1977, the defendant entered an apartment leased by David and Debbie Gardner with the intent, later consummated, to abscond with certain valuables. On his case-in-chief, the defendant called one of the cotenants, David Gardner, to the stand. Gardner testified that he had been friendly with the defendant for several years and that prior to the December 9 incident he had given the defendant blanket permission to enter his apartment at any time. On cross-examination, Gardner allowed that he had not given the defendant permission to remove any property from the apartment.

On appeal, as at his trial, the defendant directs his attack at that segment of the jury instructions in which the presiding Justice discussed the evidence pertinent to the "license or privilege" language found in Section 401.[1] The challenged passage reads as follows:

Now as to the license and privilege. There's not much of a dispute that Mr. Gardner, one of the co-tenants, gave permission but it becomes your duty under the law and considering all the facts whether or not the State has sustained its burden—which I have given you—beyond a reasonable doubt that the Defendant, Mr. Thibeault, knew that he was not licensed and privileged—or privileged to do so with the intent to commit this crime of theft which I have defined to you. Was that a license? Was it a privilege? Was it a qualified license or privilege? It's for you to say what was in the mutual contemplation of the parties when permission to enter was given by Mr. Gardner. There is no dispute that Mr. Gardner, himself, says, I never gave him consent to steal or to rip off the apartment, so the facts are not much in dispute. Therefore, you must decide whether or not from all the testimony, from all the facts, and under the law which I have given to you, whether or not the Defendant, in whatever condition he was, knew that he was not licensed or privileged when he went in those premises to commit the crime of theft.

Defendant's counsel entered a timely and appropriate objection to the above-quoted passage which served adequately to preserve the matter for appellate review.

The defendant argues that under Section 401 a person cannot validly be convicted of burglary if the individual rightfully in possession has given that person permission to enter the structure. He contends that the jury instruction was erroneous to the extent that it gave the jury the impression that if it found that the defendant had intended to commit a crime within the apartment that intention would negative, for the purposes of the burglary statute, Gardner's permission to enter.

At common law, consent to enter was a complete defense to a burglary prosecution. *See* Annot., 93 A.L.R.2d 531, § 3 (1964), and cases cited therein. Burglary, like arson, was conceived of as an invasion of the "right of habitation." *Stowell v. People*, 104 Colo. 255, 258, 90 P.2d 520, 521 (1939); *State v. Surles*, 230 N.C. 272, 275, 52 S.E.2d

---

1. The pertinent portion of Section 401 provides:
   A person is guilty of burglary if he enters or surreptitiously remains in a structure, know-
   ing that he is not licensed or privileged to do so, with the intent to commit a crime therein.

880, 882 (1949); 4 W. Blackstone, Commentaries *223. Thus, mere entry upon the dwelling of another in the nighttime with intent to commit a felony therein was insufficient to constitute the common-law crime of burglary. The prosecution additionally had to prove a "breaking": "the actual or constructive use of some force against a part of a building in effectuating an unconsented entry." *State v. High*, 281 So.2d 356, 357 (Fla.1973). (emphasis in original.) That the initial entry must be trespassory[2] was established in Maine in *State v. Newbegin*, 25 Me. 500 (1846), where the defendant was convicted of burglarizing a dry goods store which, at the time in question, was open for trade. The defendant lifted an unlocked latch, opened a door, stole some cloth, and escaped all without attracting the attention of the store attendants. The Court reversed the burglary conviction finding that the State had failed to establish a breaking.

> The offence of breaking is a violation of the security designed to exclude. And coupled with an entrance into a shop with a felonious intent, it constitutes [burglary]. The opening of a shop door . . which had been closed only to exclude the dust or cold air, with a design that it should be opened by all, who should be inclined to enter, could not be a violation of any security designed to exclude, and therefore not a breaking. *Id.* at 504.

Since the common law required a "violation of the security designed to exclude," it was axiomatic that a person entering with the permission of the lawful possessor could not be guilty of burglary. *E. g., State v. Moore*, 12 N.H. 42 (1841); *Davis v. Commonwealth*, 132 Va. 521, 110 S.E. 356 (1922);

2 R. Anderson, Wharton's Criminal Law and Procedure §§ 414, 442 (1957). As one authority explains,

> [t]he law was not ready to punish one who had been "invited" in any way to enter the dwelling. The law sought only to keep out intruders, and thus anyone given authority to come into the house could not be committing a breaking when he so entered. W. LaFave & A. Scott, Criminal Law § 96 (1972).

Although we have not had occasion to deal with a consent defense to a burglary prosecution since *Newbegin* was decided in 1846, it is nevertheless clear that consent remained a valid defense at least until such time as Maine's Criminal Code became effective in 1976. The former burglary statutes, 17 M.R.S.A. §§ 751–754, 2103, all included or incorporated by reference the familiar breaking element. Furthermore, our interpretations of that element were entirely consistent with the "security-designed-to-exclude" rationale put forth in *Newbegin*.[3]

Although few quarreled with the logic of including the requirement of a trespassory entry for a law designed to protect the security of the habitation, judicial interpretations of the "force" aspect of the breaking element rightly attracted the criticism of reformers. *E. g.*, Note, *supra* note 2, at 1012–15. In interpreting the "force" aspect, the judges of the common law, perhaps wishing to constrict the application of what was then a capital crime, *see* Comment, 23 Yale L.J. 466 (1914); Comment, 15 Colum.L. Rev. 453 (1915), created a host of fine distinctions and bewildering qualifications. *See* W. LaFave & A. Scott, *supra* at § 96.[4]

> It appears clear that the offense of burglary is one primarily against the security of the habitation. It marks the state's determination to safeguard in his dwelling the homeowner, his family and guests from the dangers that accompany felonious invasions of their sanctuaries during the particularly vulnerable periods of darkness. (footnote omitted.)

---

2. Indeed, the English common law considered burglary to be essentially a heinous form of trespassing. 5 Eng. Comm'rs Reports on the Criminal Law 4 (1840). *See* Note, *A Rationale of the Law of Burglary*, 51 Colum.L.Rev. 1009, 1020–21 (1951).

3. *See State v. Liberty*, Me., 280 A.2d 805 (1971); *State v. Mower*, Me., 275 A.2d 584 (1971); *Saleme v. Robbins*, Me., 270 A.2d 458 (1970). In *State v. Cookson*, Me., 293 A.2d 780, 784–85 (1972), for example, Justice Weatherbee declared:

4. For example, if the defendant entered through an open door or window, no breaking occurred since no force was used: the occupant, it was said, had not sufficiently secured

With burglary no longer a capital offense, the irrationality of these interpretations became manifest. Many state legislatures have reacted by excising the breaking element from their statutes entirely. *E. g.,* Cal.Penal Code § 459 (West Supp.1979); D.C.Code Encycl. § 22–1801 (West 1977). In these jurisdictions, burglary has been reduced to a three-element crime: (1) entry (2) of a structure (3) with the intent to commit a crime. Under such a statute, it is clear that consent to enter is not a defense since, no vestige of the breaking element remaining, the entry need not be trespassory to be burglarious. *See, e. g., United States v. Kearney,* 162 U.S.App.D.C. 110, 112, 498 F.2d 61, 63 (1974); *People v. Talbot,* 64 Cal.2d 691, 51 Cal.Rptr. 417, 414 P.2d 633 (1966), *cert. denied,* 385 U.S. 1015, 87 S.Ct. 729, 17 L.Ed.2d 551 (1967).

In other jurisdictions, Maine among them, the word "breaking" has been eliminated and a word or phrase such as "unlawful," "unauthorized," or "without license or privilege" has been inserted in the statute to qualify "entry." Where such language has been employed in a burglary statute, the result has generally been to retain so much of the breaking element as required a trespassory entry while at the same time eliminating the illogical rules stemming from the "force" aspect of breaking. Of course, where the statute requires a trespassory entry, the lawful possessor's consent is a complete defense. For example, in *State v. Dunn,* 263 La. 58, 267 So.2d 193 (1972), and in *State v. Rogers,* 83 N.M. 676, 496 P.2d 169 (Ct.App.1972), the courts construed the "unauthorized entry" burglary statutes of their respective states as recognizing consent to be an available defense. The Alaska Supreme Court reached the same conclusion with regard to that state's "unlawful entry" statute in *Smith v. State,* 362 P.2d

1071 (Alaska 1961). *But see Pinson v. State,* 91 Ark. 434, 121 S.W. 751 (1909), *questioned in Smith v. State, supra* at 1074 n.8, *and in* Note, *supra* note 2, at 1014 n.38; *People v. Blair,* 52 Ill.2d 371, 288 N.E.2d 443 (1972).

New York's burglary statute and the judicial interpretations thereof are particularly instructive since that statute makes use of the same "license or privilege" language found in our Section 401.[5] N.Y. Penal Law §§ 140.00(5), 140.20 (McKinney 1975). Interestingly enough, the Commission Staff Notes to N.Y. Penal Law § 140.00 reveal that the "license or privilege" language was adopted in New York for the specific purpose of legislatively overruling *People v. Sine,* 277 A.D. 908, 98 N.Y.S.2d 588 (2d Dept.1950), which had held that a burglary could be premised upon a nontrespassory entry. The New York courts have held that the "license or privilege" language included in Section 140.00(5) requires a trespassory entry. *People v. Jones,* 50 A.D.2d 750, 376 N.Y.S.2d 155 (1st Dept.1975). *See also People v. Brown,* 25 N.Y.2d 374, 306 N.Y.S.2d 449, 254 N.E.2d 755 (1969).

We hold that the "license or privilege" language in Maine's Section 401 requires a like construction. The portion of the statute relevant to this appeal provides that "[a] person is guilty of burglary if he enters . . . a structure, knowing that he is not licensed . . . to do so, with the intent to commit a crime therein." Breaking the statute down to its constituent parts, we discern four elements: (1) entry (2) of a structure (3) with the knowledge that the entry is not licensed and (4) with the intent to commit a crime within the structure. Obviously, the "license" referred to in the statute means the license to enter a particular structure. The "do so" clearly refers back to "enters." According-

---

his dwelling and was therefore not entitled to the protection of the law. 2 E. East, Pleas of the Crown 485 (1803); W. LaFave & A. Scott, *supra* at § 96. Worse still, courts were divided over the question of whether pushing open a partly open door or window was a sufficient use of force to satisfy the breaking element. *Compare State v. Murray,* 222 Iowa 925, 270

N.W. 355 (1936), *and People v. White,* 153 Mich. 617, 117 N.W. 161 (1908), *with Commonwealth v. Strupney,* 105 Mass. 588 (1870).

5. Both New York and Maine appear to have adopted modified versions of the Model Penal Code's definition of burglary. Model Penal Code § 221.1 (1974).

ly, the prosecution must, as an independent proposition, prove beyond reasonable doubt that the accused knew that he was not "licensed" to enter the structure.

■■■ The State argues that since the defendant entered the Gardners' apartment for the unlawful purpose of stealing certain valuables, any permission he may have secured from Gardner would be negated. We find no room in Section 401 for this argument. Whether or not the defendant had permission to enter is a question that must be resolved without reference to his alleged intent, another separate and distinct element of the crime. The Louisiana Supreme Court, construing that state's "unauthorized entry" statute, responded to the same argument as follows:

> As we construe the burglary statute, the entry must be unauthorized and this must be determined as a distinct element of the offense separate and apart from the intent to steal. If the legislature desired that burglary consist only of an entry with intent to steal, they would have omitted the word *unauthorized*. *State v. Dunn*, 263 La. at 63, 267 So.2d at 195. (emphasis in original.)

Much the same can be said of Maine's Section 401. If we construed the statute to allow the existence of a criminal intent upon entry to negate the permission of the lawful possessor, the result would be, for all practical purposes, the expungement of the "license" language from the statute. If the State's argument is accepted, a burglary defendant would have to prevail on the question of his intent to commit a crime in order to prevail on the "license or privilege" issue.[6] The State's interpretation would thus render the "license or privilege" language mere surplusage, and Section 401 would be little more than a variation on the typical three-element statute discussed ear-

lier. We have no reason to believe that the Legislature would inject unnecessary language into any of the Code's provisions. Indeed, our familiar rule has been to construe statutes, particularly criminal ones, as being free of superfluous language. *State v. Tullo*, Me., 366 A.2d 843, 848 (1976).

It is true that the Comment appended to Section 401 declares that the statute eliminates "the common law requirement . . . that there be a 'breaking.'" However, the next sentence, "[t]he crime loses nothing in seriousness if the burglar enters a door inadvertently left open, rather than through a door he breaks open," indicates that the revisers intended to draft the statute in such a way as to eliminate only the "force" aspect of breaking together with the irrational judicial interpretations that accompanied it. The "license or privilege" language inserted in the statute itself indicates that the trespassory aspect of the breaking element was retained.[7]

■■■ Turning to the instruction given by the presiding Justice, we conclude that the jury was given the mistaken impression that it could find the defendant guilty of burglary whether or not David Gardner gave him permission to enter the apartment. "There's not much of a dispute," stated the court, "that Mr. Gardner, one of the co-tenants, gave permission . . . ." That being the case, the jury's function, according to the court, was to determine whether or not the defendant "knew that he was not licensed [to enter] with the intent to commit this crime of theft . . ." The instruction invited the jury to consider whether, in the words of the presiding Justice, a "qualified license" existed. As our analysis here indicates, Section 401 does not contemplate the kind of qualification out-

---

6. *State v. Williams*, Me., 387 A.2d 27, 29 (1978), and *State v. Field*, Me., 379 A.2d 393, 395 (1977), established that Section 401 requires the State to prove that the defendant entertained an intent to commit a crime at the time he entered the structure.

7. In interpreting Section 401, we have followed our long-standing rule of statutory construction holding that enactments alleged to be in derogation of common law must be strictly construed and that any departure from common law must be clearly manifested. *Palmer v. Inhabitants of Sumner*, 133 Me. 337, 343–44, 177 A. 711, 714 (1935).

lined by the presiding Justice.[8] A remand will therefore be necessary.[9]

The entry is:

Appeal sustained.

Judgment of conviction set aside.

Case remanded for a new trial.

WERNICK and NICHOLS, JJ., did not sit.

---

**8.** Generally speaking, the law recognizes the lawful possessor's right to attach specific conditions to his permission, generally regarding the time and place of entry, and when the defendant's entry occurs outside of the limitation the consent defense is not available. *See* Annot., 93 A.L.R.2d 531 § 5 (1964). Thus, in *State v. Newbegin, supra,* the shopowner's implied consent to enter during business hours would not be available to a person entering when the shop was not open for business. Whether and to what extent Section 401 recognizes this principle we need not decide today.

**9.** Although David Gardner did testify that he gave the defendant permission to enter the premises at any time, the defendant is not entitled to a judgment of acquittal as a matter of law. The jury was free to disbelieve Gardner's testimony particularly since Gardner's credibility was seriously challenged on grounds of bias and prior conviction.