522 So.2d 963 (1988)
Jerome Edward RAY, Appellant,
v.
The STATE of Florida, Appellee.
No. 86-2288.
District Court of Appeal of Florida, Third District.
March 22, 1988.
Bennett H. Brummer, Public Defender, and Harvey J. Sepler, Asst. Public Defender, for appellant.
*964 Robert A. Butterworth, Atty. Gen., and Michael J. Neimand, Asst. Atty. Gen., for appellee.
Before SCHWARTZ, C.J., and BASKIN and DANIEL S. PEARSON, JJ.
DANIEL S. PEARSON, Judge.
The question presented by this case is whether a defendant can be found guilty of burglary under Section 810.02, Florida Statutes (1985), where he lawfully enters the home of another, and after communicating to the occupant  by word or deed  his intent to commit a crime therein, remains in the home against the occupant's wishes.

I.
Ray was prosecuted on charges of attempted first-degree murder, attempted sexual battery, and burglary with the intent to commit an assault. Charlene Bryant, the alleged victim, testified that on the day of the crimes, she first saw Ray when, returning to the floor on which her apartment was located, she passed him on the stairs where he was seated having a beer with another tenant in the complex. Shortly thereafter, Ray knocked on Bryant's door and asked to come in. Bryant let Ray in, and they sat down. Ray told Bryant that he had overheard her telling the "rent lady" that she was short on the rent. Ray offered to find Bryant a man who would pay her to have sex, but Bryant refused. Their ensuing brief conversation about other things was interrupted by a woman knocking on the door. Both Bryant and Ray went to the door, and Ray left Bryant's apartment. A short time later, Ray again knocked on Bryant's door, and again she let him in. He explained that the woman who had come to the door was his girlfriend. Moments later Ray grabbed Bryant from behind, began choking her, dragged her toward the part of the main room where the bed was located, and tried to force her to have sex with him. Bryant fought him off until the police, summoned by neighbors who heard the struggle, arrived and subdued Ray.[1] Ray's unwillingness to go peacefully with the police resulted in the lodging of additional charges of resisting an officer with violence and battery upon a police officer. The jury found Ray guilty of battery of a law enforcement officer and burglary of a dwelling with the intent to commit an assault; it acquitted Ray of all other charges. On this appeal, Ray challenges the burglary conviction only.[2]

II.
Section 810.02(1), Florida Statutes (1985), defines the crime of burglary[3] as:

*965 "entering or remaining in a structure or a conveyance with the intent to commit an offense therein, unless the premises are at the time open to the public or the defendant is licensed or invited to enter or remain."
Because, as the State concedes, Ray was invited to enter Bryant's premises and therefore cannot be convicted of the crime of entering, we confine our discussion to the "remaining in" language of the statute.
The phrase "remaining in" has been interpreted as proscribing an act distinct from that of entering.[4] In Routly v. State, 440 So.2d 1257 (Fla. 1983), the court rejected, as being without merit, the defendant's contention that because he had lawfully entered the decedent's home at the outset, there could be no burglary. The court held that "[t]he burglary statute is satisfied when the defendant `remains in' a structure with the intent to commit an offense therein. Hence, the unlawful entry is not a requisite element." Id. at 1262. See State v. Belton, 190 Conn. 496, 500, 461 A.2d 973, 976 (1983) ("To enter unlawfully contemplates an entry which is accomplished unlawfully, while to remain unlawfully contemplates an initial legal entry which becomes unlawful at the time the actor's right, privilege or license to remain is extinguished.") (footnote omitted). The interpretation given the statute in Routly complies with the rule of statutory construction that, if possible, meaning should be ascribed to all words in a statute. Terrinoni v. Westward Ho!, 418 So.2d 1143 (Fla. 1st DCA 1982); Pinellas County v. Woolley, 189 So.2d 217 (Fla. 1st DCA 1966); see Chaffee v. Miami Transfer Co., 288 So.2d 209 (Fla. 1974). Moreover, such an interpretation follows from the holding that consent is a recognized defense to a charge of unlawful entry in this state. See State v. Hicks, 421 So.2d 510 (Fla. 1982); note 3, supra. Since, as the State concedes, the evidence is undisputed that Ms. Bryant consented to Ray's entering the premises, the issue we must address is whether the evidence supports the jury's necessary, albeit implicit, finding that Bryant's consent to Ray's remaining in the premises was withdrawn. Otherwise stated, once consensual entry is complete, a consensual "remaining in" begins, and any burglary conviction must be bottomed on proof that consent to "remaining in" has been withdrawn.[5]

*966 III.
It is undeniably true that a person would not ordinarily tolerate another person remaining in the premises and committing a crime, and that when a victim becomes aware of the commission of a crime, the victim implicitly withdraws consent to the perpetrator's remaining in the premises. Thus, in Hambrick v. State, 174 Ga. App. 444, 330 S.E.2d 383 (1985), the court held that a jury question was presented regarding whether the victim's struggle with the defendant indicated withdrawal of consent to be on the premises, which would render unauthorized the defendant's remaining there.
"With regard to burglary, Hambrick argues that the evidence is undisputed that he had authority to enter. While that is true, it does not end the matter... . When Hambrick's ulterior purpose beyond the bounds of a friendly visit became known to Arrington [the victim  Hambrick's elderly stepgrandfather], who was the source of the authority, and he reacted against it, a reasonable inference could be drawn that the authority to remain ended. Arrington did not have to shout `Get out!' for this to be so. Yet Hambrick remained until he got possession of the money, far beyond the time at which the scope of the permission ended."
Hambrick v. State, 330 S.E.2d at 385-86.
Likewise, in Johnson v. State, 473 So.2d 607 (Ala. Crim. App. 1985), the court held that for the purpose of satisfying the requirement that the defendant enter or remain unlawfully, the occupant's consent is terminated when the defendant knows or has reason to know that the occupant no longer wants the defendant to remain. Finding that non-consent could be proved by circumstantial evidence, the court inferred that the murder victim had terminated the defendant's license to remain from the circumstances of the brutal murder: there were obvious signs of struggle and the victim had been severely beaten. See also People v. Powell, 58 N.Y.2d 1009, 448 N.E.2d 797, 461 N.Y.S.2d 1012 (1983) (burglary conviction sustained where jury could find that though defendant's entry was lawful, he was not licensed to remain because it was apparent from the time of day and absence of people that the offices were no longer open to the public); People v. Racanelli, 132 Ill. App.3d 124, 87 Ill.Dec. 187, 476 N.E.2d 1179 (1985) (although defendants' entry into apartment was initially with the victim's consent, attack on the victim and removal of his property sufficient evidence that consent had been withdrawn, making subsequent remaining in unlawful); Tribbett v. Commonwealth, 561 S.W.2d 662 (Ky. 1978) (defendant remained unlawfully after murder of occupant caused defendant's license to lapse).
In the present case, the evidence demonstrates without question that Bryant verbally and physically resisted the defendant's assault. As in Hambrick, 330 S.E.2d 383, we will not require that Bryant have yelled to the defendant, "Get out!" before we can conclude that the defendant's license to remain on the premises was withdrawn. As the legislative changes indicate, Florida's modern burglary statute focuses on the safety of people and property, Toole v. State, 472 So.2d 1174 (Fla. 1985); Anderson v. State, 356 So.2d 382 (Fla. 3d DCA 1978), and these policies are clearly implicated in this case. See State v. Cochran, 191 Conn. 180, 463 A.2d 618 (1983) (potential terror of burglary not lacking even though "burglar" was invited in). *967 Therefore, we agree with the State that Bryant's struggle with the defendant was sufficient evidence that she withdrew her consent to Ray's remaining in the premises, making his remaining in the premises after the withdrawal a burglary.
We have not overlooked that the victim's actions in terminating the offender's authority to remain in the premises places the offender at risk of having an otherwise minor charge against him elevated to burglary.[6] Model Penal Code § 221.1, at 71 (Official Draft and Revised Comments) (1980). For example, if a visitor in a home becomes involved in an argument with the host, threatens to hit the host, and is asked by the host to leave, his failure to leave and continued threats would subject the visitor to a burglary charge. Although Professor LaFave argues that this unlawful remaining in ought not be treated as a burglary and that "it is best to limit the remaining-in alternative to where that conduct is done surreptitiously," 2 W. LaFave & A. Scott, Substantive Criminal Law § 8.13, at 468 (1986) (footnote omitted), we are bound to construe our statute as written and not add to it a word  "surreptitiously"  not placed there by the Legislature. See Chaffee v. Miami Transfer Co., 288 So.2d 209 (Fla. 1974). Just as the consent defense must be given meaning, so must the "remaining in" alternative. Compare State v. Lockhart, 438 So.2d 1089 (La. 1983) (statute lacks "remaining in" alternative; consent to enter complete defense to burglary charge); State v. Thibeault, 402 A.2d 445 (Me. 1979) (statute proscribes only "surreptitiously" remaining in). We thus agree with State v. Mogenson, 10 Kan. App. 2d 470, 475, 701 P.2d 1339, 1344-45 (1985), where the court, confronted with our precise problem, stated:
"Assuming defendant was initially authorized to enter the house when his son unlocked the door, that authority was terminated when the defendant's wife demanded that he leave the house. By remaining in the house and committing aggravated battery on his wife, defendant was subject to being convicted of aggravated burglary. The unlawful act, remaining without authority, concurs with the criminal intent to commit aggravated battery and so satisfies the statute's elements."
Accordingly, Ray's burglary conviction is
Affirmed.
NOTES
[1] Ray did not testify on his own behalf, and there were no other witnesses to the incidents until the police arrived and broke up a struggle between Ray and Bryant.
[2] Ray was sentenced to concurrent six-year terms of imprisonment. The collateral consequences of the burglary conviction are, of course, sufficient to require our review of it.
[3] The definition of burglary at common law included breaking and entering with the intent to commit a felony. Burglary was thus conceived of as an invasion of the right of habitation or of the possessory property rights of another. Cannon v. State, 102 Fla. 928, 136 So. 695 (1931); State v. Hicks, 421 So.2d 510 (Fla. 1982). The breaking requirement  that is, "the actual or constructive use of some force against a part of a building in effecting an unconsented entry," State v. High, 281 So.2d 356, 357 (Fla. 1973) (emphasis in original)  meant that the initial entry had to be trespassory. As Professor LaFave notes, "[t]he law was not ready to punish one who had been `invited' in any way to enter the dwelling. The law sought only to keep out intruders, and thus anyone given authority to come into the house could not be committing a breaking when he so entered." 2 W. LaFave & A. Scott, Substantive Criminal Law § 8.13, at 464-65 (1986) (footnote omitted).

Because a host of absurd distinctions grew up around the breaking requirement, many states, including Florida, simply excised or omitted it from their statutes. See 2 W. LaFave & A. Scott, supra, at 466, 477. Although Florida has eliminated the "breaking" requirement, the entry must still be unlawful, thus retaining the trespassory aspect of the crime. Thus, consent to entry is a defense to this charge. State v. Hicks, 421 So.2d 510. In contrast, in jurisdictions which have concluded that the entry need not be trespassory, consent to entry is not a defense, and the crime is proved by showing the entry  even by invitation  with the specified unlawful intent. People v. Talbot, 64 Cal.2d 691, 414 P.2d 633, 51 Cal. Rptr. 417 (1966), overruled on other grounds, People v. Wilson, 1 Cal.3d 431, 462 P.2d 22, 82 Cal. Rptr. 494 (1969), and People v. Ireland, 70 Cal.2d 522, 450 P.2d 580, 75 Cal. Rptr. 188 (1969); People v. Sears, 62 Cal.2d 737, 401 P.2d 938, 44 Cal. Rptr. 330 (1965); State v. Blair, 273 N.W.2d 187 (S.D. 1979) (no consent defense indicated in statutory wording; entry with requisite intent constitutes burglary). In such jurisdictions, unlawful intent and entry become, in effect, the only elements of the crime, and, to the extent that the burglary statute in such a jurisdiction has "remaining in" language, it has been rendered meaningless by judicial interpretation. E.g., State v. Shult, 380 N.W. 352 (S.D. 1986) (despite its "remaining in" language, statute construed as converting entry with unlawful intent into a burglary); United States v. Kearney, 162 U.S. App. D.C. 110, 498 F.2d 61 (1974) (same).
[4] As is recognized in those jurisdictions which, like Florida, have multiple definitions of burglary, the intent necessary to commit a theft or felony may be formed after lawful entry upon the premises. Routly v. State, 440 So.2d 1257 (Fla. 1983); State v. Belton, 190 Conn. 496, 461 A.2d 973 (1983); State v. Embree, 130 Ariz. 64, 633 P.2d 1057 (Ariz. App. 1981); State v. Mogenson, 10 Kan. App. 2d 470, 701 P.2d 1339 (1985); Gratton v. State, 456 So.2d 865 (Ala.Cr.App. 1984); State v. Reams, 292 Or. 1, 636 P.2d 913 (1981); State v. Papineau, 53 Or. App. 33, 630 P.2d 904 (1981); see also State v. Peace, 88 Ill. App.3d 1090, 44 Ill.Dec. 365, 411 N.E.2d 334 (1980) (although defendant may have remained in house unlawfully to assault baby-sitter after being invited in to use the telephone, burglary conviction improper since defendant had been charged with only entering unlawfully); People v. Vallero, 61 Ill. App.3d 413, 416-17, 19 Ill.Dec. 48, 378 N.E.2d 549, 551-52 (1978) (Stengel, J., concurring) (formation of intent to steal after defendant lawfully entered building would be inconsequential because presence in the building beyond authorized hours is remaining within building without authority, a proper combination of unlawful act and criminal intent), disagreed with on other grounds, People v. Martin, 121 Ill. App.3d 196, 76 Ill.Dec. 642, 459 N.E.2d 279 (1984).
[5] Because we conclude that the evidence supports the jury's implicit finding that the victim withdrew her consent to the defendant's remaining in the premises, we need not reach the State's broader, alternative argument that the defendant's conviction can be bottomed simply on his remaining in the premises while possessing the requisite criminal intent. But see State v. Thibeault, 402 A.2d 445 (Me. 1979), in which the court rejected the state's invitation to construe the statute to mean that the mere existence of the requisite criminal intent after a lawful entry ipso facto constituted a withdrawal of the occupant's consent to remain. The court held that "the result would be, for all practical purposes, the expungement of the `license' language from the statute. If [this] argument is accepted, a burglary defendant would have to prevail on the question of his intent to commit a crime in order to prevail on the `license ...' issue." Id. at 449 (footnote omitted). Indeed, New York's statute was amended to overrule case law espousing this very concept and now requires a "direct and personal order to leave" before the defendant's presence becomes a burglary. N.Y. Penal Law § 140.00 (McKinney 1975 & Supp. 1988); People v. Hutchinson, 124 Misc.2d 487, 477 N.Y.S.2d 965 (Sup.Ct. 1984), aff'd, 121 A.D.2d 849, 503 N.Y.S.2d 702 (1986).
[6] Happily, we need not concern ourselves with the potential elevation of a shoplifting offense to a burglary. This is so because Section 810.02, Florida Statutes (1987), precludes a burglary charge where "the premises are at the time open to the public." That the premises are open to the public is a complete defense to a burglary charge, avoiding the absurd result of State v. Shult, 380 N.W.2d 352 (S.D. 1985) (pizza thief guilty of burglary because he entered store with intent to shoplift). See State v. Graney, 380 So.2d 500 (Fla. 2d DCA 1980); Arabie v. State, 699 P.2d 890 (Alaska App. 1985).