750 So.2d 63 (1999)
Romance FRANKLIN, Appellant,
v.
STATE of Florida, Appellee.
No. 98-1209.
District Court of Appeal of Florida, Fourth District.
October 13, 1999.
Richard L. Jorandby, Public Defender, and Steven H. Malone, Assistant Public Defender, West Palm Beach, for appellant.
*64 Robert A. Butterworth, Attorney General, Tallahassee, and Robert R. Wheeler, Assistant Attorney General, West Palm Beach, for appellee.

ON MOTION FOR REHEARING
DELL, J.
We grant appellant's motion for rehearing and clarification. We withdraw the opinion issued on July 28, 1999, and substitute the following opinion.
Romance Franklin appeals his convictions and sentences for robbery with a deadly weapon, armed burglary of an occupied structure, and resisting an officer without violence. Appellant argues seven points on appeal; only two merit discussion. We affirm his convictions and sentences for robbery with a deadly weapon and for resisting an officer without violence. We reverse his conviction and sentence for armed burglary of an occupied structure.
On August 29, 1997, two armed masked men robbed a 7-Eleven. The robbery was captured on the store's video camera and witnessed by two employees. After the two men left, the employees called the police. At 1:41 a.m., the police issued a BOLO (be on the lookout) report. The BOLO described "two black male suspects wearing masks and armed with long guns, possibly a shotgun, [who] had just robbed the [7-Eleven] and ran south from the front of the building." At approximately 1:42 a.m., Officer Hardman responded to the call and saw appellant and another black male standing near a bookstore, a block north of the 7-Eleven. Officer Hardman pulled up to talk to the men, and they both walked across the street. He pulled into the parking lot, rolled down his window, and said, "Hey, can you guys stop for a minute, I'd like to speak to you." Both men continued walking, not acknowledging the officer's comments. Officer Hardman continued rolling forward and said, "Excuse me, I want to talk to you for a minute, can you stop, please." Both men continued walking. Officer Hardman then opened his car door to get out as the two were coming up the sidewalk towards him and said, "Hey, I need to talk to you, can you stop please." At that point, appellant's companion ran and appellant followed. Officer Hardman pursued appellant, following him to an apartment. After asking appellant to step outside, he was handcuffed, arrested, and Mirandized.
Thereafter, appellant waived his Miranda rights and told the police what had happened. He led the police to the location of the clothing shown on the video tape and the money from the robbery. Appellant also provided a taped statement where he identified himself and the other man as having committed the robbery, described the masks they wore, the guns they carried, and admitted that he took two cigars and other items from the store as he left. One cigar, fitting the description of the cigars taken from the store, was later found in the apartment where appellant was apprehended.
Appellant contends that the trial court erred in denying his motion for judgment of acquittal on the charges of armed burglary and resisting an officer without violence. He argues that he could not commit a burglary when the 7-Eleven is open to the public twenty-four hours a day, seven days a week, and that the evidence was insufficient to infer that the employees withdrew their consent for him to be on the premises.
Section 810.02(1), Florida Statutes (1997), defines "burglary" as "entering or remaining in a dwelling, a structure, or a conveyance with the intent to commit an offense therein, unless the premises are at the time open to the public or the defendant is licensed or invited to enter or remain." Since the store was "at the time open to the public," appellant had consent to enter the 7-Eleven. Appellant argues that the state presented no evidence that the employees withdrew their consent for him to remain on the premises. Here, a *65 store employee witnessed appellant and another man enter the store. The employee told his co-worker that they were about to be robbed. When appellant and the other man approached the employees, the same employee repeatedly told his co-worker to give them the money, because that was what they wanted. The co-worker gave the men the money, in expectation that they would leave.
The state argues that "the employees of the convenience store implicitly withdrew their consent to Appellant remaining on the premises when they became aware that he entered the store for purposes of committing a crime." In Miller v. State, 733 So.2d 955 (Fla.1998) (revising and superseding Miller v. State, 713 So.2d 1008 (Fla.1998)), the state made a similar argument. The supreme court reversed Miller's burglary conviction stating:
In Ray v. State, 522 So.2d 963 (Fla. 3d DCA 1988), the Third District Court of Appeal formulated the proposition that once consent is established, the State can demonstrate that consent has been withdrawn. There has been some confusion regarding the application of Ray to cases involving the "open to the public" affirmative defense. To resolve this conflict, we hold that if a defendant can establish that the premises were open to the public, then this a complete defense. See Collett v. State, 676 So.2d 1046, 1047 (Fla. 1st DCA 1996) ("But premises are either open to the public or they are not, and the fact that persons with criminal intent have been given permission to enter has no effect on whether premises are open to the public. Otherwise, every time a person entered a structure that was open to the public with the intent to commit a crime, the person would have committed a burglary a result directly in conflict with the express language of section 810.02(1)."); Ray, 522 So.2d. at 967 n. 6 ("That the premises are open to the public is a complete defense to a burglary charge...."). Whether or not consent may have been withdrawn, either by direct or circumstantial evidence, is not an issue. The only relevant question is whether the premises were open to the public at the time the defendant entered or remained with the intent to commit an offense therein.
Id. at 957 (footnote omitted) (emphasis added).
Here, the 7-Eleven was "open to the public" at the time the appellant committed the offense. Under Miller, this is a complete defense to burglary. Id. Therefore, appellant's conviction and sentence for armed burglary of an occupied structure must be reversed.
Appellant next contends that the trial court erred in failing to grant his motion for judgment of acquittal on the charge of resisting an officer without violence. He argues that Officer Hardman did not order him to stop but merely asked to speak to him, and that Officer Hardman lacked sufficient cause to stop him. Both arguments lack merit.
In Harris v. State, 647 So.2d 206 (Fla. 1st DCA 1994), the first district noted that the crime of resisting an officer without violence cannot take place if either the officer "lacked an articulable well founded suspicion of criminal activity to justify the attempt to detain [the appellant] or if [the appellant] had no reason to believe that he was being detained." Id. at 208 (emphasis in original). Officer Hardman asked appellant and his companion to "stop" three different times, the third after stopping his patrol car in front of the two men as they were walking toward him. We hold that Officer Hardman's requests were sufficient to inform appellant that he wanted him to stop for questioning and his refusal to stop constituted resisting an officer without violence. See M.C. v. State, 450 So.2d 336 (Fla. 5th DCA 1984).
We also reject appellant's argument that Officer Hardman lacked sufficient cause to stop and question appellant *66 about the 7-Eleven robbery. In State v. Stevens, 354 So.2d 1244 (Fla. 4th DCA 1978), this court listed several factors to consider whether an officer had sufficient cause to stop and temporarily detain an individual. These factors include: "the time; the day of the week; the location; the physical appearance of the suspect; the behavior of the suspect; the appearance and manner of operation of any vehicle involved; anything incongruous or unusual in the situation as interpreted in the light of the officer's knowledge." Id. at 1247. Here, the robbery occurred late at night, at approximately 1:30 a.m. The BOLO was issued at 1:41 a.m. It described two black males running south from the front of the 7-Eleven. Officer Hardman observed appellant and another man one block north of the robbery at 1:42 a.m.[1] Both men fit the general description of the BOLO.
"To justify temporary detention, only `founded suspicion' in the mind of the detaining officer is required.... A `founded suspicion' is suspicion which has some factual foundation in the circumstances observed by the officer, when those circumstances are interpreted in the light of the officer's knowledge." Id. Based on the time of the day, the BOLO description and appellant's close proximity to the robbery within minutes of the BOLO report, Officer Hardman had the authority to temporarily detain appellant and question him about the robbery. Id.; see also Fla. Stat. § 901.151(2) (1997).
Accordingly, we affirm appellant's convictions and sentences for robbery with a deadly weapon and resisting an officer without violence. We reverse and vacate his conviction and sentence for armed burglary of an occupied structure. Since the record does not conclusively demonstrate that the trial court would have given the same sentence on the remaining convictions, we remand for resentencing on robbery with a deadly weapon and resisting an officer without violence. See Carter v. State, 705 So.2d 582, 583 (Fla. 2d DCA 1997).
AFFIRMED in part, REVERSED in part, and REMANDED.
STEVENSON and HAZOURI, JJ., concur.
NOTES
[1] The fact that the suspects fled in a southerly direction does not preclude them from changing direction so as to place them one block north of the store.