[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JAN 17, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-12115 & No. 07-12155

_____

D. C. Docket No. 05-23293-CV-FAM

RONNIE JOHNSON,

Petitioner-Appellant,

versus

FLORIDA DEPARTMENT OF CORRECTIONS,
James McDonough, Secretary,

Respondent-Appellee.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

**(January 17, 2008)**

Before DUBINA, BARKETT and HULL, Circuit Judges.

HULL, Circuit Judge:

Ronnie Johnson, a state prisoner under two death sentences, filed a pair of

28 U.S.C. § 2254 petitions, one attacking his first sentence, the other attacking his second. In separate orders, the district court dismissed each petition as untimely. We consolidated Johnson's appeals. After review and oral argument, we affirm.

## I. BACKGROUND

On March 11, 1989, Johnson murdered laundromat owner Tequila Larkins, a hired killing which he committed in return for "about $300 or $400." Nine days later, Johnson murdered grocery store owner and community anti-drug activist Lee Arthur Lawrence, this time for $1,500.[1] After his conviction for the Larkins murder in Florida state court, he was sentenced to death. After his jury conviction for the Lawrence murder, he was sentenced to death for that crime. On direct appeal, the Florida Supreme Court affirmed. See Johnson v. State (Johnson I), 696 So. 2d 317 (Fla. 1997) (Lawrence); Johnson v. State (Johnson II), 696 So. 2d 326 (Fla. 1997) (Larkins). The United States Supreme Court denied certiorari review. See Johnson v. Florida, 522 U.S. 1095, 118 S. Ct. 892 (1998) (mem.); Johnson v. Florida, 522 U.S. 1120, 118 S. Ct. 1062 (1998) (mem.).

After his direct appeals terminated in early 1998, Johnson did not collaterally attack his death sentences until early 2001. On March 1, 2001 he filed

---

[1]We refer to the first murder as the "Larkins murder," and to the second as the "Lawrence murder." Furthermore, we refer to all direct and collateral proceedings relating to the Lawrence murder, docketed first in this Court, as "Johnson I," and all direct and collateral proceedings relating to the Larkins murder as "Johnson II."

a motion for post-conviction relief pursuant to Fla. R. Crim. P. 3.850 in Johnson I, and on March 20, 2001 he filed a Rule 3.850 motion in Johnson II. The state trial court denied both Rule 3.850 motions. Johnson appealed and also filed petitions for writs of habeas corpus directly in the Florida Supreme Court. On March 31, 2005, the Florida Supreme Court affirmed the denials of Johnson's Rule 3.850 motions and denied Johnson's habeas petitions. See Johnson v. State, 903 So. 2d 888 (Fla. 2005) (Johnson I); Johnson v. State, 921 So. 2d 490 (Fla. 2005) (Johnson II). The Florida Supreme Court issued its mandates on June 13, 2005.

On December 22, 2005, Johnson filed his 28 U.S.C. § 2254 petitions in federal district court. The district court denied each as untimely under 28 U.S.C. § 2244(d)(1)'s one-year statute of limitations. The district court granted Johnson's motions for certificates of appealability. We consolidated Johnson's appeals.

## II. STANDARD OF REVIEW

We review de novo a district court's dismissal of a § 2254 petition as untimely. Wade v. Battle, 379 F.3d 1254, 1259 n.5 (11th Cir. 2004). We review its factual determinations for clear error. LeCroy v. Fla. Dep't of Corr., 421 F.3d 1237, 1259 (11th Cir. 2005), cert. denied, 546 U.S. 1219, 126 S. Ct. 1458 (2006).

## III. DISCUSSION

Under 28 U.S.C. § 2244(d)(1), Johnson's § 2254 petitions are subject to a

3

one-year statute of limitations, which begins to run on the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.[2]

Under 28 U.S.C. § 2244(d)(2), this limitations period is statutorily tolled during the pendency of a "properly filed application for State post-conviction or other collateral review" with respect to the pertinent judgment.

Johnson's convictions and death sentences became final on January 26, 1998 and February 23, 1998, the dates on which the United States Supreme Court denied his certiorari petitions. Using the "conclusion of direct review" starting date in § 2244(d)(1)(A), Johnson's limitations periods began to run on January 26, 1998 and February 23, 1998, and expired on January 27, 1999 and February 24, 1999. Johnson did not file his § 2254 petitions until December 22, 2005, and thus, if the

---

[2]The Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA) established the one-year limitations period, and Johnson filed his § 2254 petitions in 2005 after its effective date.

§ 2244(d)(1)(A) starting date applies, they were untimely filed. Moreover, Johnson's state post-conviction filings in March 2001 did not stop his AEDPA clocks because the one-year time had already expired. See Sibley v. Culliver, 377 F.3d 1196, 1204 (11th Cir. 2004) (concluding "[a] state court filing after the federal habeas filing deadline does not revive it").

On appeal Johnson raises several arguments discussed below.

## A.     State Impediment to Filing

Johnson first argues that state action created impediments that prevented him from filing his § 2254 petitions, and thus his AEDPA clocks did not begin to run until the impediments were removed. See 28 U.S.C. § 2244(d)(1)(B); Arthur v. Allen, 452 F.3d 1234, 1249 (11th Cir. 2006), cert. denied, __ U.S. __, 127 S. Ct. 2033 (2007). Johnson alleges three state-created impediments: (1) the "turmoil" surrounding Florida's implementation of its post-conviction representation system, which delayed the appointment of Johnson's original state post-conviction counsel until August 9, 1998; (2) the ineffective assistance of Johnson's original state post-conviction counsel in not filing Rule 3.850 motions; and (3) the state's objection, on privilege and attorney-work-product grounds, to Johnson's current counsel's request, filed in February 2000, for access to documents needed in preparing

5

Johnson's state post-conviction filings.[3]

The problem for Johnson is the United States Supreme Court has held that prisoners in capital cases have no constitutional right to post-conviction counsel. See Lawrence v. Florida, __ U.S. __, 127 S. Ct. 1079, 1085 (2007) ("Lawrence II"), aff'g Lawrence v. Florida, 421 F.3d 1221 (11th Cir. 2005) ("Lawrence I"); Murray v. Giarratano, 492 U.S. 1, 10, 12, 109 S. Ct. 2765, 2771-72 (1989); Pennsylvania v. Finley, 481 U.S. 551, 555-57, 107 S. Ct. 1990, 1993-94 (1987). Thus, a state's delay in appointing such counsel is not a "violation of the Constitution or laws of the United States," as required by § 2244(d)(1)(B). And this Court has already held that "incompetent" performance by appointed counsel "is not the type of State impediment envisioned in § 2244(d)(1)(B)." Lawrence I, 421 F.3d at 1226.[4] Later, in Gordon v. Secretary, Department of Corrections, 479 F.3d 1299, 1301 (11th Cir. 2007), this Court reaffirmed that "the failure of . . . court-appointed counsel to file more promptly [for state post-conviction relief does not qualify as] an impediment to filing created by State action, within the meaning

---

[3]Johnson's first post-conviction attorney, Stuart Mishkin, was appointed on August 9, 1998, at which time he had more than five months in Johnson II, and more than six months in Johnson I, left on AEDPA's statute of limitations.

His current counsel, Charles G. White, was appointed on February 1, 2000, and filed Johnson's state post-conviction motions and petitions, as well as his federal § 2254 petitions.

[4]The Supreme Court did not consider the state impediment issue in Lawrence II; it affirmed on other grounds. See Lawrence II, 127 S. Ct. at 1086.

of § 2244(d)(1)(B)."

Likewise, Johnson has not established that the State's objection to the production of certain documents constituted an illegal impediment to filing his § 2254 petitions.  To delay the running of the statute of limitations, § 2244(d)(1)(B) requires state action that both "violat[ed] . . . the Constitution or laws of the United States" and "prevented [the prisoner] from filing" his federal petition.  28 U.S.C. § 2244(d)(1)(B).  Johnson has pointed to no federal statute or constitutional provision that the State's objections violated.  Johnson also has not demonstrated how the State's action actually prevented him from timely filing his § 2254 petitions.

In any event, the state trial court conducted an <u>in camera</u> review of the documents on April 28, 2000, and immediately made available to Johnson the first three categories of documents he had requested.[5]  As to the remaining documents, the state court ordered that the NCIC report be produced unless the state objected within five days.[6]  The state court refused disclosure of the grand jury

---

[5]Johnson requested access to seven categories of documents: (1) victim autopsies and other lab results; (2) Johnson's own medical records (which were withheld because Johnson had not signed an authorization form for the state corrections department to release them); (3) Johnson's sentencing materials, including the sentencing order and Pre-Sentencing Investigation Report; (4) a National Crime Information Center (NCIC) report regarding Johnson; (5) police reports; (6) State's Attorney notes; and (7) a grand jury memorandum with handwritten notes.

[6]The record is silent as to whether the State raised a further objection within the five-day period, and whether and when the documents were eventually produced.  The state trial court did

7

memorandum or the State's Attorney notes, although the court reviewed the latter for potential Brady[7] violations.  The state court declined to produce the police reports at that time because the state claimed that a version of them, redacted to remove victim addresses and phone numbers, had already been produced in discovery to Johnson's trial counsel, and Johnson's current counsel had not yet obtained and reviewed the file from Johnson's trial counsel.

In fact, Johnson has never identified to this Court a single document to which he did not ultimately gain access, much less how its lack prevented him from filing either of his § 2254 petitions.[8]  Johnson's factual allegations fall far short of the standard required to invoke § 2244(d)(1)(B).  Therefore, the state impediment provision does not apply, and the one-year statute of limitations began to run on the date Johnson's convictions became final in 1998.

## B.    Equitable Tolling

Johnson next argues that the limitations period should be equitably tolled. Equitable tolling may apply "when a movant untimely files because of

---

issue an order on February 12, 2001 releasing some documents to Johnson, but it is not clear from the face of the order which documents they were.

[7]See Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194 (1963).  Nothing in the record indicates that the court discovered any potential violations.

[8]He has also failed to mention precisely which documents he did receive, and the dates on which he received them.

extraordinary circumstances that are both beyond his control and unavoidable even with diligence." Arthur, 452 F.3d at 1252 (quotation marks and citation omitted); Helton v. Sec'y for the Dep't of Corr., 259 F.3d 1310, 1313 (11th Cir. 2001); Tinker v. Moore, 255 F.3d 1331, 1333 (11th Cir. 2001).[9]

Johnson bears the burden of establishing equitable tolling. Outler v. United States, 485 F.3d 1273, 1280 (11th Cir. 2007). To discharge his burden, he must demonstrate: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." Lawrence II, 127 S. Ct. at 1085 (quotation marks and citation omitted).

As grounds for equitable tolling, Johnson proffers again the incompetence of his first post-conviction attorney. However, this Court has "stated on numerous occasions that attorney negligence is not a basis for equitable tolling, especially when the petitioner cannot establish his own diligence in ascertaining the federal habeas filing deadline." Lawrence I, 421 F.3d at 1226 (quotation and citations omitted); see Steed v. Head, 219 F.3d 1298, 1300 (11th Cir. 2000) ("Mere attorney negligence does not justify equitable tolling."). Here, Johnson has not

---

[9]Although the Supreme Court has not expressly approved the application of equitable tolling to the AEDPA statute of limitations, it has recently assumed, without deciding, that equitable tolling is available in this context. See Lawrence II, 127 S. Ct. at 1085. This Court's precedent is consistent with the Supreme Court's Lawrence II formulation of the equitable tolling standard. See id.; Arthur, 452 F.3d at 1252; Lawrence I, 421 F.3d at 1226.

9

demonstrated his own diligence, as his correspondence with his first attorney reveals that Johnson knew there was a federal timeliness issue. Further, after his current counsel was appointed, Johnson waited thirteen months before filing his Rule 3.850 motions. Consequently, Johnson has not shown the requisite diligence to establish equitable tolling.

Johnson argues that because the state court equitably extended the state limitations period for filing his Rule 3.850 motions and the State did not object to the state court's extension, the federal limitations period for his § 2254 petitions must be equitably tolled. However, this Court has already held that a federal habeas petitioner is not entitled to equitable tolling merely because the state court granted an extension of time to file his state post-conviction petitions. See Howell v. Crosby, 415 F.3d 1250, 1251-52 (11th Cir. 2005) (holding that § 2254 petitioner whose state post-conviction petition was timely filed pursuant to an extension of time granted by state court but which was filed more than one year after his conviction became final under § 2244(d)(1)(A) was entitled to neither statutory nor equitable tolling). Moreover, our precedent provides that federal habeas petitioners who rely upon the timeliness of state post-conviction proceedings to satisfy the requirements of AEDPA do so at their peril. See id.; see also Tinker, 255 F.3d at 1334-35 (holding that Florida's then-applicable two-year limitations period for

10

state habeas petitions did not toll the federal one-year period; rather, a federal petitioner "must exercise his [state remedy] within one year . . . and do so in a manner that leaves him sufficient time to timely file his federal petition").

Based on the record in this particular case and our binding precedent, we cannot say that the district court erred in concluding that Johnson had not demonstrated entitlement to equitable tolling of AEDPA's statute of limitations.

## C.    Actual Innocence

Lastly, Johnson argues that his § 2254 petition concerning the Larkins murder, even if untimely, must be permitted because he is actually innocent. He is essentially arguing that AEDPA's one-year limitations period violates the Suspension Clause when an otherwise time-barred petitioner can show he is actually innocent. See Arthur, 452 F.3d at 1244; Wyzykowski v. Dep't of Corr., 226 F.3d 1213, 1218 (11th Cir. 2000). This Court has held that before addressing this difficult constitutional question, we should first consider whether the petitioner can show actual innocence. See Arthur, 452 F.3d at 1244; Sibley v. Culliver, 377 F.3d 1196, 1205 (11th Cir. 2004); Wyzykowski, 226 F.3d at 1218. To date, this Court has avoided this constitutional issue because no time-barred petitioner has made the requisite actual-innocence showing. Arthur, 452 F.3d at 1244; Sibley, 377 F.3d at 1205; Wyzykowski, 226 F.3d at 1218. Thus, we first examine

11

Johnson's actual-innocence claim as to the Larkins convictions.

To successfully plead actual innocence, a petitioner must show that his conviction resulted from "a constitutional violation." Schlup v. Delo, 513 U.S. 298, 327, 115 S. Ct. 851, 867 (1995). To do so, he must demonstrate "that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." Id. at 327, 115 S. Ct. at 867; Arthur, 452 F.3d at 1245. The petitioner must raise "sufficient doubt about [his] guilt to undermine confidence in the result of the trial." Arthur, 452 F.3d at 1245 (quotations and citation omitted). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." Bousley v. United States, 523 U.S. 614, 623, 118 S. Ct. 1604, 1611 (1998).

Johnson's innocence claim is based on the Florida Supreme Court's Delgado decision in 2000, discussed below, that interpreted the state's burglary statute. At the time of Johnson's 1991 trial, Florida defined burglary statutorily as "entering or remaining in a dwelling, a structure, or a conveyance with the intent to commit an offense therein, unless the premises are at the time open to the public or the defendant is licensed or invited to enter or remain." Fla. Stat. Ann. § 810.02(1) (1989). Interpreting § 810.02(1), the Third District Florida Court of Appeal had held that if a defendant enters a structure by consent, he may nevertheless be guilty

of burglary under § 810.02(1) if the evidence demonstrates that the consent, either expressly or implicitly, was withdrawn. Ray v. State, 522 So. 2d 963, 965-67 (Fla. Dist. Ct. App. 1988). Once consent is withdrawn, the Florida appellate court reasoned in Ray, the offender's unlawful "remaining in" the premises sufficed to establish burglary, even though he did not unlawfully "enter." Id.

Twelve years later, however, and after direct review ended in Johnson II, the Florida Supreme Court in 2000 overturned Ray, holding that consent to enter was a complete defense to a burglary charge unless the "remaining in" the premises with unlawful intent was done "surreptitiously." Delgado v. State, 776 So. 2d 233, 237-41 (Fla. 2000). Delgado expressly stated that its holding "will not . . . apply retroactively to convictions that have become final." Id. at 241 (citing Witt v. State, 387 So. 2d 922, 928-31 (Fla. 1980)).

Johnson argues (1) that he is actually innocent of burglary under the Delgado construction of Florida's burglary statute; (2) that his first-degree murder charge rested on two independent theories of premeditated murder and felony murder based on a felony burglary charge; (3) that because the jury's verdict did not distinguish between the premeditation and felony-murder theories, he is innocent of the murder charge; and (4) that the Florida Supreme Court's refusal to apply Delgado retroactively to his case violated his federal due process rights.

13

Johnson's arguments lack merit.[10]

First, Johnson cannot demonstrate a due process violation from the failure to retroactively apply the now-abrogated Delgado interpretation of the Florida burglary statute.[11] In Jimenez v. Florida Department of Corrections, 481 F.3d 1337, 1341-43 (11th Cir.), cert. denied sub nom. Jimenez v. McDonough, __ U.S. __, 128 S. Ct. 628 (2007), this Court denied a § 2254 petitioner's application for a COA with respect to this precise issue. Although in Jimenez the petitioner was procedurally barred from raising the Delgado retroactivity argument for failure to exhaust state remedies, we also rejected the argument on the merits. See id. at 1342-43 ("Even if his claim were not procedurally barred, Jimenez did not make a substantial showing that the Florida Supreme Court's refusal to apply retroactively

_____

[10]We note that Johnson does not offer new evidence, but simply a new interpretation of the burglary statute. Although Schlup suggests that this is insufficient, see Schlup, 513 U.S. at 324, 115 S. Ct. at 865 ("To be credible, [an actual innocence] claim requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial."), the Supreme Court's opinion in Bousley, 523 U.S. at 622-24, 118 S. Ct. at 1611-12, suggests otherwise. See id. (indicating that a federal habeas petitioner should be permitted the opportunity to raise an actual innocence claim based on a new interpretation of the statute under which he pled guilty). However, we need not reach this issue because, as discussed infra, even assuming Johnson has raised a proper actual innocence claim, his claim fails.

[11]Shortly after Delgado was decided, the Florida legislature amended § 810.02 to make clear that an invited person entering a premises need not remain surreptitiously and adopted § 810.015, which expressly stated the legislature's intent that Delgado's holding be "nullified" and that the burglary statute, § 810.02, be "construed in conformity with . . . Ray." Fla. Stat. Ann. § 810.015 (2001). The legislature's abrogation of Delgado took effect on May 25, 2001. See Foster v. State, 861 So. 2d 434, 438-41 (Fla. Dist. Ct. App. 2002).

14

an interpretation of the burglary statute violated his constitutional rights.").

Johnson has not distinguished our prior holding in <u>Jimenez</u>.[12] Thus, he cannot

show a due process violation.

Moreover, Johnson does not come within the <u>Delgado</u> rule in any event.

<u>Delgado</u> held that a defendant who was consensually invited inside a person's

premises could not be guilty of burglary if he or she later committed a crime there

unless the defendant <u>surreptitiously</u> remained in the premises. <u>Delgado</u>, 776 So.

2d 233, 237-41. However, "<u>Delgado</u> . . . concerns only the situation where the

defendant enters the premises with the occupant's consent. It does not address a

defendant's entry onto the premises by fraud or trick." <u>Schrack v. State</u>, 793 So.

2d 1102, 1104 (Fla. Dist. Ct. App. 2001). Under Florida law, a trick- or fraud-

induced entrance will support a burglary conviction because when such means are

used, "there is actually no consent at all." <u>Id.</u> Here, Johnson gained entrance by

_____

[12]Johnson argues that the Florida Supreme Court's refusal to apply <u>Delgado</u> retroactively to his case runs afoul of the United States Supreme Court's pronouncements in <u>Teague v. Lane</u>, 489 U.S. 288, 109 S. Ct. 1060 (1989) and <u>Fiore v. White</u>, 531 U.S. 225, 121 S. Ct. 712 (2001). But <u>Teague</u>, which concerned the retroactive effect of "new constitutional rules of criminal procedure," <u>see</u> <u>Teague</u>, 489 U.S. at 310, 109 S. Ct. at 1075 (plurality opinion), obviously does not apply to <u>Delgado</u>, the holding of which was neither constitutional nor procedural. In <u>Fiore</u>, the Supreme Court held that due process prohibited the incarceration of a defendant convicted of conduct that the state supreme court later held, in a <u>clarification</u> of the law as it existed at the time of the defendant's conduct rather than in a post-conviction <u>change</u> in the law, not to be criminal. <u>Fiore</u>, 531 U.S. at 228-29, 121 S. Ct. at 714. <u>Fiore</u> does not apply here either, because <u>Delgado</u>, on its face, clearly announced a change in the burglary law rather than a mere clarification. <u>See</u> <u>Delgado</u>, 776 So. 2d at 241 (recognizing that, by its holding, the Florida Supreme Court was "reced[ing] from [its] previous opinions," and declaring that the new interpretation would not apply retroactively to convictions that had already become final).

15

fraud or trick.

At Johnson's trial, the evidence showed that at approximately nine o'clock p.m., Larkins locked the front door of the laundromat she owned with two customers inside finishing their laundry. Johnson arrived at the locked front door and asked for change. Larkins got her keys and unlocked the door. Jerry Briggs, a customer inside the laundromat, testified that Johnson "barged in the door" and immediately "started arguing and then started physically fighting" Larkins. Briggs also testified that Johnson "came into the front door and just started hitting [Larkins] in the face." Larkins then fell to the ground. Johnson got on top of her, pulled out a gun, and shot her. Larkins died. Moreover, the State introduced Johnson's sworn statement admitting that he entered the laundromat because he had been hired to kill Larkins. This evidence provides an ample basis for a reasonable juror to conclude that Johnson did not enter by consent because he convinced Larkins to unlock the door under the false pretense that he wanted change. Hence, Delgado does not apply, and Johnson's actual-innocence argument fails on this basis too.[13]

_____

[13]In addition to his Delgado retroactivity argument, Johnson argues that he is actually innocent under a retroactive application of Miller v. State, 733 So. 2d 955 (Fla. 1998), which held that if a Florida burglary defendant "can establish that the premises were open to the public, then this is a complete defense." Id. at 957 (emphasis omitted). However, contrary to Johnson's contention in his brief, Miller did not abrogate Ray; indeed, the two cases are entirely consistent. Compare Miller, 733 So. 2d at 957 (stating, as above, that the premises being open to the public "is a complete defense"), with Ray, 522 So. 2d at 967 n.6 ("That the premises are open to the

16

## IV. CONCLUSION

For all of these reasons, the district court did not err in dismissing Johnson's § 2254 petitions as untimely.

**AFFIRMED.**

---

public is a complete defense to a burglary charge . . . .”).  Retroactivity of <u>Miller</u>, therefore, is irrelevant to the question of Johnson's innocence.  Furthermore, the testimony that Larkins' laundromat was locked at the time Johnson arrived furnishes a sufficient basis upon which the jury could conclude that the premises were not open to the public.