MARTIN, Circuit Judge,
concurring in judgment:
I agree with the Majority’s holdings that: (1) Mr. Lugo failed to demonstrate that he is entitled to equitable tolling under Holland v. Florida, 560 U.S. 631, 130 S.Ct. 2549, 177 L.Ed.2d 130 (2010); and (2) the District Court did not abuse its discretion when it denied Mr. Lugo’s Rule 60(b) motion. I write separately, however, be *1216 cause Mr. Lugo’s case highlights a problem that we have seen before in our Court. The problem is the failure of state court-appointed collateral counsel to timely file a defendant’s first federal habeas petition, with the result that federal courts are being barred from reviewing the merits of the claims of death row inmates. As I have looked into this problem, I have been struck by how widespread it is, so I devote some of my discussion to examining the scope of the problem. I also hope to contribute to the Majority’s discussion about the rights of state capital habeas petitioners under federal law and the systems that are available to improve the ability of state capital habeas petitioners to get federal review of their cases.[1]
I.
Mr. Lugo is only one of a number of death row prisoners in Florida who have failed to file their federal habeas petitions within the one-year statute of limitations for state prisoners. See 28 U.S.C. § 2244(d)(1). There are currently 397 men and women on Florida’s death row. See Death Row Roster, Fla. Dep’t of Corr., http://www.dc.state.fl.us/activeinmates/ deathrowroster.asp (last visited Apr. 23, 2014). By my count, at least thirty-four of those inmates have missed their one-year filing deadline since AEDPA’s effective date.[2] Two of these thirty-four were recently executed: Juan Chavez on February 12, 2014, and Paul Howell on February 26, 2014. In addition to the significant percentage of capital defendants affected,[3] *1217 this problem seems worthy of mention for several reasons.
First, the Supreme Court has told us that the “[dismissal of a first federal habeas petition is a particularly serious matter, for that dismissal denies the petitioner the protections of the Great Writ entirely, risking injury to an important interest in human liberty.” Lonchar v. Thomas, 517 U.S. 314, 324, 116 S.Ct. 1293, 1299, 134 L.Ed.2d 440 (1996). This is still true after AEDPA. Athough “state courts are the principal forum for asserting constitutional challenges to state convictions,” Harrington v. Richter, — U.S. -, -, 131 S.Ct. 770, 787, 178 L.Ed.2d 624 (2011), the Supreme Court recently reaffirmed the “importance of federal habeas corpus proceedings as a method for preventing individuals from being held in custody in violation of federal law,” Trevino v. Thaler, — U.S. -, -, 133 S.Ct. 1911, 1916-17, 185 L.Ed.2d 1044 (2013) (citing Martinez v. Ryan, — U.S. -, -, 132 S.Ct. 1309, 1315-16, 182 L.Ed.2d 272 (2012)). Thus, state prisoners on death row have a right to federal habeas review, and this right should not depend upon whether their court-appointed counsel is competent enough to comply with AEDPA’s statute of limitations. See generally Hutchinson v. Florida, 677 F.3d 1097, 1103-11 (11th Cir. 2012) (Barkett, J., concurring in result).
Second, without federal review under AEDPA, we can offer no “guard against extreme malfunctions in the state criminal justice systems.” See Harrington, 131 S.Ct. at 786 (quotation marks omitted). I would not expect “extreme malfunctions” in state criminal justice systems to happen very often, but they do happen. Both the United States Supreme Court and this Court have found reason to grant habeas relief to Florida capital habeas petitioners under AEDPA. See, e.g., Porter v. McCollum, 558 U.S. 30, 130 S.Ct. 447, 175 L.Ed.2d 398 (2009); Farina v. Sec’y, Fla. Dep’t of Corr., 536 Fed.Appx. 966 (11th Cir.2013); Cooper v. Sec’y, Dep’t of Corr., 646 F.3d 1328 (11th Cir.2011); Guzman v. Sec’y, Dep’t of Corr., 663 F.3d 1336 (11th Cir.2011); Johnson v. Sec’y, DOC, 643 *1218 F.3d 907 (11th Cir.2011). If any of these habeas petitioners had missed their AED-PA limitations deadline, they likely would have been put to death without ever having received a look by the federal courts into the merits of their claims. It is hard to see how they would have gotten the relief they did.
Third, it is simply arbitrary for our collateral review process to allow some capital defendants to get federal habeas review (because their court-appointed attorneys appreciate the significance of AEDPA’s statute of limitations), while others do not. Cf. Furman v. Georgia, 408 U.S. 238, 294-95, 92 S.Ct. 2726, 2754-55, 33 L.Ed.2d 346 (1972) (Brennan, J., concurring). As the thirty-four prisoners identified in the appendix demonstrate, whether a Florida death row inmate gets federal habeas review may be decided without regard to the facts of their crime or the character of the defendant.
Sadly, Mr. Lugo’s case illustrates how a prisoner’s statute of limitations for filing a federal habeas petition can expire even before his counsel filed his state postconviction motion. Mr. Lugo had until October 6, 2004, to file his federal petition for writ of habeas corpus or properly file an application for postconviction relief or other collateral review in state court to toll the time for filing his federal petition. See 28 U.S.C. § 2244(d)(1)(A), (d)(2). But neither he nor his state court-appointed counsel filed either. By the time Mr. Lugo’s attorney filed his state habeas petition on October 18, 2004, the federal statute of limitations had already lapsed by 12 days. See Maj. Op. at 1202-03, 1208-09. Therefore, even if Mr. Lugo had filed a federal habeas petition on the day that his state collateral proceedings ended, it would have already been too late. See Tinker v. Moore, 255 F.3d 1331, 1333 (11th Cir. 2001).
II.
This alarming number of cases in which state-appointed attorneys have allowed their clients’ federal statutes of limitations to expire naturally causes us who see these cases to question how prisoners can preserve their right to federal habeas review. Certainly one of the things that prisoners can do is to seek appointed counsel in federal court close in time to when their cases become final on direct review. The Supreme Court has held that under 18 U.S.C. § 3599(a)(2), state “[hjabeas petitioners facing execution now receive counsel as a matter of [statutory] right, not an exercise of the court’s discretion.” Martel v. Clair, — U.S. -, -, 132 S.Ct. 1276, 1285, 182 L.Ed.2d 135 (2012); see also 18 U.S.C. § 3599(a)(2). Beyond that, the Supreme Court has held that an indigent capital habeas petitioner’s statutory “right to appointed counsel includes a right to legal assistance in the preparation of a habeas corpus application.” McFarland v. Scott, 512 U.S. 849, 856, 114 S.Ct. 2568, 2572, 129 L.Ed.2d 666 (1994). “An attorney’s assistance prior to the filing of a capital defendant’s habeas corpus petition is crucial, because the complexity of our jurisprudence in this area ... makes it unlikely that capital defendants will be able to file successful petitions for collateral relief without the assistance of persons learned in the law.” Id. at 855-56, 114 S.Ct. at 2572 (quotation marks omitted). Thus, federal courts have the authority to appoint counsel under § 3599 before a federal petition is filed and, in fact, even before a state petition is filed.
Applying this law to the facts of Mr. Lugo’s case, Mr. Lugo or his state court-appointed counsel could have filed a request for counsel in federal court as soon as his case became final on direct review. Alternatively, Mr. Lugo could have filed a pro se request for the appointment of fed *1219 eral counsel once he had cause to believe his state court-appointed counsel was not going to timely file his federal petition. Had he done either of those things, I understand the District Court would have been obligated to appoint counsel for him, provided he otherwise met the financial eligibility requirements. See id. Also, Mr. Lugo’s request would have had the benefit of initiating his federal habeas corpus proceedings, see id. at 856-57, 114 S.Ct. at 2572-73, thereby entitling him “to a variety of expert and investigative services upon a showing of necessity,” id. at 855, 114 S.Ct. at 2572. See also 18 U.S.C. § 3599(f) (authorizing “investigative, expert, or other services [where] reasonably necessary for the representation of the defendant”).
With the early appointment of federal habeas counsel, Mr. Lugo would have gained these benefits regardless of whether he was represented by state post-conviction counsel and regardless of whether he had filed a state postconviction petition. I am not aware of any law or precedent which would require Mr. Lugo to wait until the conclusion of his state habeas proceeding before seeking counsel for his federal habeas proceedings. Certainly, it cannot be the case that Mr. Lugo was required to wait until his limitations period expired before he could request and be afforded competent and qualified federal habeas counsel to help him prepare and file his federal petition. Otherwise the statutory right to the assistance of counsel under § 3599 and McFarland would be meaningless.
My understanding is supported by the Defender Services Committee of the United States Judicial Conference, which has explained why appointment of counsel at the earliest possible time is important in federal habeas proceedings:
Federal counsel need adequate time to investigate, research, and prepare proper capital habeas corpus petitions. Prior to even beginning work on the petition, federal counsel must collect and read the record, establish a relationship with the client, assemble a team that includes mitigation experts and fact investigators, and make preliminary evaluations regarding such matters as client competency, mental retardation, and mental health issues, as well as comply with the ABA Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases. Because extra-record claims can not be raised as part of direct appeals, they must be fully investigated and litigated in habeas corpus petitions.
Statutes of limitations place strict limits on the time counsel has to file such a petition. Under the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), the statute of limitations for filing a petition is one year. Experience has shown that one year is barely sufficient time to file a federal capital habeas corpus petition even when the petitioner is represented by experienced, institutionally-funded, full-time, federal defender staff well versed in capital habeas litigation. In practice, waiting to appoint federal counsel until the state post-conviction proceeding is completed results in less than one year in which to file the federal habeas petition. The limitation period begins to run, subject to “tolling,” from the latest of four triggering events, including “the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review” (i.e., a petition for writ of certiorari in the United States Supreme Court). 28 U.S.C. § 2244(d)(1). Although “[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or *1220 claim is pending shall not be counted toward any period of limitation” under the AEDPA (28 U.S.C. § 2244(d)(2)), all or any portion of the federal statute of limitations could expire before the state post-conviction petition is filed. State post-conviction counsel often expend nearly all of the federal limitations period before filing a state postconviction pleading. This is especially true in states that have longer filing deadlines than those provided by the AEDPA.
Timely Appointment Strategy, U.S. Jud. Conf. Defender Servs. Comm., Goal 1 (Timeliness), Strategy 12 (Capital Habeas Corpus) & Goal 2 (Quality of Representation), Strategy 18 (Capital Habeas Corpus) cmt. (emphasis added). Thus, state court prisoners on death row can and should take advantage of their statutory right to counsel in federal habeas proceedings at the time their case becomes final on direct review. Doing so will protect a prisoner’s right to federal habeas review, regardless of how long it takes for state postconviction counsel to file a state habeas petition. See n. 5, infra.
III.
Of course, complications can arise when a prisoner petitions a federal court to appoint counsel during the pendency of his state collateral review proceedings. None of these complications, however, should be serious enough to dissuade a federal court from appointing counsel to prisoners. The Majority, for example, is concerned that federally-appointed counsel will use federal funds to litigate a prisoner’s habeas claims in state court. I have no quarrel with that concern. In fact, I generally agree with the Majority “that a state prisoner is not entitled, as a matter of statutory right, to have federally paid counsel assist him in the ... exhaustion of his state postconviction remedies.” Maj. Op. at 1213.
On the other hand, district courts plainly have discretion to authorize federally-appointed counsel to exhaust claims on a “case-by-case” basis. Harbison v. Bell, 556 U.S. 180, 190 n. 7, 129 S.Ct. 1481, 1489 n. 7, 173 L.Ed.2d 347 (2009) (“Pursuant to § 3599(e)’s provision that counsel may represent her client in ‘other appropriate motions and procedures,’ a district court may determine on a case-by-case basis that it is appropriate for federal counsel to exhaust a claim in the course of her federal habeas representation.” (emphasis added)). The Judicial Conference Committee on Defender Services has issued a memorandum to provide guidance to courts when they are asked to appropriate federal funds for CJA attorneys or federal defender organizations who wish to exhaust state court claims. See Memorandum from Judge Claire V. Eagan, Chair, Judicial Conference Comm, on Defender Servs., to Judges, U.S. Dist. Courts, et. al. 1 (Dec. 9, 2010) (addressing “Use of Defender Services Appropriated Funds by Federal Appointed Counsel for State Court Appearances in Capital Habeas Cases). When a district court is presented with such a request, the Committee recommends that the presiding judge make a case-by-case determination, considering an extensive laundry list of things, including the following:
• the availability of the petitioner’s original state postconviction counsel or other qualified state counsel;
• the availability of state funds for investigative and expert services;
• the willingness of the state court to appoint and compensate the petitioner’s federal counsel;
• the number and nature of the claims to be exhausted;
• state court rules governing the appearance of counsel;
• any unwarranted delay that would be caused by the lack of continuity in not having federal counsel handle the exhaustion in state court;
*1221 • the need to avoid disruption of the proceedings;
• the need to avoid disruption of the attorney/client relationship;
• whether the investigation and research as to the unexhausted claim has already been done by the federal counsel;
Id. at 3-4; see also Federal Judicial Center, Capital § 2251 Habeas Cases: A Pocket Guide for Judges 10 (2012), available at http://www.fjc.gov/public/pdf.nsiy lookup/cap2254hab.pdP$file/cap2254hab. pdf. Having federal district judges consider these factors should protect against the Majority’s concern that federal funds will be spent on litigating a prisoner’s habeas claims in state court.
It is not my goal to propose a solution to the problem of ensuring the timely filing of state postconviction motions. While the problem of timely filed state habeas petitions may be related to the problem of blown federal deadlines, the two issues are distinct.[4] And this distinct state problem should not interfere with the separate obligation of federal courts to timely appoint federal habeas counsel upon request. Indeed, the reality that state court-appointed counsel too often fail to properly file a postconviction motion in state court before the state and federal statutes of limitation expires supports the need to appoint independent federal counsel early enough that they can investigate, prepare, and timely file a federal habeas corpus petition.[5]
Finally, I enthusiastically agree with the Majority that one or more Florida Capital Habeas Units (CHUs) would be helpful in “combating the problem of missed AEDPA deadlines among Florida death-row inmates,” Maj. Op. at 1215, at least for those inmates who are lucky enough to be represented by CHU attorneys.[6] I emphasize, *1222 however, that creating a CHU or CHUs will not by itself ensure that all Florida death row inmates will get highly qualified federal counsel or that federal counsel is appointed in a timely manner or that more AEDPA deadlines will not be missed in the future. All indigent death row inmates, whether represented by CHU, CCRC, or Criminal Justice Act panel attorneys, are entitled to the timely appointment or qualified counsel for the purpose of investigating, preparing, and timely filing a federal habeas corpus petition. See 18 U.S.C. § 3599. Even after counsel is appointed in federal court, there can be circumstances in which the “interests of justice” require district courts to replace appointed counsel, see Martel, 132 S.Ct. at 1285-86, or appoint conflict-free co-counsel to fully develop and argue equitable tolling issues that implicate appointed counsel’s own conduct, see id. at 1286 (“Even in the absence of [18 U.S.C 3559(e)’s substitution of counsel] provision, a court would have to ensure that the defendant’s statutory right to counsel was satisfied throughout the litigation; for example, the court would have to appoint new counsel if the first lawyer developed a conflict with or abandoned the client.”). See also Thomas v. McDonough, No. 3:03-cv-237 (M.D.Fla. Feb. 27, 2006), ECF No. 31 at 5 (consolidated order appointing conflict-free co-counsel in three capital § 2254 cases where state contended the federal petitions were time barred and the District Court determined that “at least some of the grounds upon which an equitable tolling argument might be based implicated appointed counsel’s own conduct”).
Alas, none of these ideas about the implementation of 18 U.S.C. § 3599 are of any help to Mr. Lugo. Given the facts of his case, we are barred from considering the merits of his claims. Although this panel has surely exceeded the specifics of Mr. Lugo’s case, this seemed to be a proper place to talk about the systems in place to ensure meaningful federal habeas review for inmates sentenced to death in this Circuit.
APPENDIX[7]
Florida capital defendants who filed § 2254 habeas petitions which were untimely and did not qualify for equitable tolling:
1. Chadwick Banks v. Sec’y, Fla. Dep’t of Corr., 491 Fed.Appx. 966 (11th Cir.2012), cert. denied sub nom., Banks v. Crews, — U.S. -, 134 S.Ct. 118, 187 L.Ed.2d 85 (2013).
2. Michael Bell v. Fla. Att’y Gen., 461 Fed.Appx. 843 (11th Cir.2012) (per curiam), petition for cert. filed, No. 13-8415 (Nov. 14, 2013).
3. Oscar Ray Bolin v. Sec’y, Dep’t of Corr., No. 8:10-cv-1571, 2013 WL 3327873 (M.D.Fla. July 1, 2013), ECF No. 31 (order finding petition time barred and alternatively denied on the merits), certificate of appealability denied, No. 13-13539 *1223 (11th Cir. Sept. 20, 2013), cert. denied sub nom., Bolin v. Florida, — U.S. -, 134 S.Ct. 695, 187 L.Ed.2d 561 (2013).
4. Donald Lee Bradley v. Sec’y, Fla. Dep’t of Corr., No. 3:10-ev-1078 (M.D.Fla. Mar. 12, 2014), ECF No. 15 at 2 n. 4, 55 (order finding that petition was untimely and did not qualify for equitable tolling and denying the petition on the merits).
5. George Brown v. Sec’y, Fla. Dep’t of Corr., No. 8:06-cv-142 (M.D.Fla. Feb.13, 2006), ECF No. 5 (order to show cause why petition should not be dismissed as time barred where AEDPA limitations period expired on March 19, 2005 and federal habeas petition was not filed until January 25, 2006).[8]
6. Harry Lee Butler v. Sec’y, Fla. Dep’t of Corr., No. 8:12-cv-02859 (M.D.Fla. Jan. 24, 2014), ECF No. 20 (order denying petition as time-barred and denying equitable tolling), certificate of appealability granted, No. 14-10797 (11th Cir. Apr. 11, 2014).
7. Juan Chavez v. Sec’y Fla. Dep’t of Corr., 647 F.3d 1057 (11th Cir. 2011), cert. denied sub nom., Chavez v. Tucker, — U.S. -, 132 S.Ct. 1018, 181 L.Ed.2d 752 (2012).[9]
8. Loran Cole v. Crosby, No. 5:05-cv-222, 2006 WL 1169536 (M.D.Fla. May 3, 2006) (order dismissing petition as time barred without discussing equitable tolling and, alternatively, denying the petition on the merits), certificate of appealability denied, No. 06-13090 (11th Cir. Jul. 31, 2007).
9. Floyd Damren v. Sec’y, Fla. Dep’t of Corr., No. 3:03-cv-397-J-32, 2013 WL 5353246 (M.D.Fla. Sept. 24, 2013), appeal docketed, No. 13-15017 (11th Cir. Oct. 29, 2013).
10. James Ford v. Sec’y, Dept. of Corr., No. 2:07-cv-333, 2012 WL 113523 (M.D.Fla. Jan. 13, 2012), certificate of appealability denied, No. 09-14820 (11th Cir. Mar. 14, 2012).
11. Charles Foster v. Crosby, No. 5:03-ev-108 (N.D.Fla. Dec. 13, 2004), ECF No. 28, certificate of appealability denied, No. 05-10344 (11th Cir. Sept. 30, 2005), cert. denied sub nom., Foster v. McDonough, 549 U.S. 1251, 127 S.Ct. 1369, 167 L.Ed.2d 158 (2007).
12. Ricardo Gonzalez v. Sec’y, Fla. Dep’t of Corr., No. l:08-cv-22909 (S.D.Fla. Sept. 28, 2009), ECF No. 15 (order finding petition time barred and alternatively denying claims on the merits), aff'd on other grounds, 629 F.3d 1219 (11th Cir. 2011) (per curiam), cert. denied sub nom. Gonzalez v. Tucker, — U.S. -, 132 S.Ct. 543, 181 L.Ed.2d 356 (2011).
13. Olen Gorby v. McNeil, 530 F.3d 1363 (11th Cir.2008) (per curiam) (affirming District Court’s dismissal of federal petition as time barred but not addressing equitable tolling), cert. denied 556 U.S. 1109, 129 S.Ct. 1592, 173 L.Ed.2d 684 (2009).[10]
*1224 14. Robert Gordon v. Crosby, No. 8:04-cv-355, 2006 WL 2474068 (M.D.Fla. Aug. 25, 2006), certificate of appealability denied sub nom., Gordon v. Sec’y, Dep’t of Corr., 479 F.3d 1299 (11th Cir.2007) (per curiam).
15. Richard Hamilton v. Sec’y, DOC, 410 Fed.Appx. 216 (11th Cir.2010) (per curiam), cert. denied sub nom, Hamilton v. Tucker, — U.S. -, 132 S.Ct. 226, 181 L.Ed.2d 126 (2011).
16. Paul Howell v. Crosby, 415 F.3d 1250 (11th Cir.2005), cert. denied, 546 U.S. 1108, 126 S.Ct. 1059, 163 L.Ed.2d 885 (2006).[11]
17. Jeffrey Hutchinson v. Florida, 677 F.3d 1097 (11th Cir.2012), cert. denied, — U.S. -, 133 S.Ct. 435, 184 L.Ed.2d 266 (2012).
18. Ronnie Johnson v. Fla. Dep’t of Corr., 513 F.3d 1328 (11th Cir. 2008), cert. denied sub nom. Johnson v. McNeil, 555 U.S. 851, 129 S.Ct. 348, 172 L.Ed.2d 86 (2008).[12]
19. Gary Lawrence v. Florida, 421 F.3d 1221 (11th Cir.2005), aff'd, 549 U.S. 327, 127 S.Ct. 1079, 166 L.Ed.2d 924 (2007).
20. Pablo San Martin v. McNeil, 633 F.3d 1257 (11th Cir.2011), cert. denied sub nom., San Martin v. Tucker, — U.S. -, 132 S.Ct. 158, 181 L.Ed.2d 73 (2011).
21. Kenneth A. Stewart v. Sec’y, Dep’t of Corr., No. 8:11-cv-44 (M.D.Fla. Feb. 27, 2014), ECF No. 29 (order dismissing petition as time barred), certificate of appeal pending, 14-11238 (11th Cir. Apr. 15, 2014).
22. William Earl Sweet v. Sec’y, Dep’t of Corr., 467 F.3d 1311 (11th Cir. 2006), cert. denied sub nom. Sweet v. McDonough, 550 U.S. 922, 127 S.Ct. 2139, 167 L.Ed.2d 871 (2007).
23. Anthony F. Wainwright v. Sec’y, Dept. of Corr., 537 F.3d 1282 (11th Cir.2007) (per curiam).
24. Michael Zack v. Tucker, 704 F.3d 917 (11th Cir.2013) (en banc) (finding all claims except one claim to be time barred), cert. denied sub nom., Zack v. Crews, — U.S. -, 134 S.Ct. 156, 187 L.Ed.2d 109 (2013).
Florida capital defendants who filed § 2254 habeas petitions which were untimely and qualified for equitable tolling:
25. Mark Asay v. McNeil, No. 3:05-ev-147, 2009 WL 9081403 (M.D.Fla. Feb. 10, 2009), cert. denied, 558 U.S. 1007, 130 S.Ct. 495, 175 L.Ed.2d 377 (2009).[13]
26. Ronald Palmer Heath v. Sec’y, Fla. Dep’t of Corr., No. 1:09-cv-148MCR-CAS (N.D.Fla. August 16, 2010), ECF No. 66 (order adopting report and recommendation, ECF *1225 No. 62, finding petition untimely but equitable tolling appropriate making petition timely filed), denial of habeas corpus aff'd, 717 F.3d 1202 (11th Cir.2013).
27. Albert Holland v. Florida, 560 U.S. 631, 130 S.Ct. 2549, 177 L.Ed.2d 130 (2010), remanded to 854 F.Supp.2d 1229 (2012) (vacating conviction and granting request for new trial).
28. Jose Jimenez v. Crosby, No. 1:04-ev-20132 (S.D.Fla. Jan. 30, 2006), ECF No. 73 (finding equitable tolling but denying relief), certificate of appealability denied sub nom., Jimenez v. Fla. Dep’t of Corr., 481 F.3d 1337 (11th Cir.2007) (per curiam), cert. denied sub nom., Jimenez v. McDonough, 552 U.S. 1029, 128 S.Ct. 628, 169 L.Ed.2d 405 (2007).
29. William Thomas v. McNeil, No. 3:03-cv-237, 2009 WL 9081403 (M.D.Fla. Feb. 10, 2009) (finding equitable tolling and denying motion to dismiss for untimeliness), cert. denied, 558 U.S. 1007, 130 S.Ct. 498, 175 L.Ed.2d 377 (2009), relief denied sub nom., Thomas v. Sec’y, Fla. Dep’t of Corr., No. 3:03-cv-237 (M.D.Fla. Sept. 3, 2013), ECF No. 141, appeal docketed, No. 13-14635 (11th Cir. Oct. 7, 2013).
30. Ernest Whitfield v. Sec’y, Dep’t of Corr., No. 8:07-cv-1823 (M.D.Fla. May 31, 2012), ECF No. 59 (vacating order granting motion to dismiss petition as time barred and finding petitioner was entitled to equitable tolling), certificate of appealability denied, No. 13-13625 (11th Cir. Mar. 24, 2014).
Florida capital defendants identified by the Clerk of the Florida Supreme Court who have been denied relief in initial state postconviction proceedings but do not appear to have timely filed a federal habeas petition:[14]
31. Marvin Jones v. State, 928 So.2d 1178 (Fla.2006).
32. David Miller v. State, 926 So.2d 1243 (Fla.2006).
33. James Franklin Rose v. State, 985 So.2d 500 (Fla.2008).
Other Florida Capital defendants who the Florida Attorney General has alleged would have had an untimely filed federal habeas petition:
34. Byron Bryant v. McNeil, 9:05-cv-80562 (S.D.Fla. Feb. 23, 2009), ECF No. 23 at 3 (motion to dismiss for lack of prosecution alleging that no federal peti *1226 tion had been filed and more than three years of untolled time had elapsed since petitioner Bryant’s case became final in state postconviction).[15]

. To begin, I recognize that what I say here is not necessary to decide the equitable tolling issues presented by Mr. Lugo’s case. The same is true of the opinions expressed by the Majority beyond its analysis of the statute of limitations and equitable tolling issues. See, e.g., Maj. Op. at 1212 ("Our decision that Lugo is not entitled to equitable tolling of AEDPA’s one-year statutory deadline for seeking federal habeas relief disposes of this appeal.”); see also United States v. Kaley, 579 F.3d 1246, 1253 n. 10 (11th Cir.2009) (explaining that dicta includes “those portions of an opinion that are not necessary to deciding the case then before us,” while the holding of a case is "comprised both of the result of the case and those portions of the opinion necessary to that result” (quotation marks omitted)).

. The appendix attached to the end of my concurrence identifies, as best I can tell, the Florida capital prisoners who have missed AEDPA's one-year deadline. While the large majority of these petitioners will likely never have the merits of their habeas claims reviewed in federal court because of the statute of limitations bar, we also know that a few have received alternative merits rulings, and a few have also successfully argued they are entitled to equitable tolling. For example, upon remand from the Supreme Court, the petitioner in Holland demonstrated he was entitled to equitable tolling. Holland v. Florida, No. 1:06-cv-20182 (S.D.Fla. Nov. 23, 2010), ECF No. 112 at 6. Once Mr. Holland's habeas claims were reviewed on the merits, the District Court granted him a new trial based on his Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), claim. Holland v. Tucker, 854 F.Supp.2d 1229, 1240-72, 1300 (S.D.Fla.2012) (order granting in part petition for habeas corpus). Of course, I express no opinion about the equitable tolling issues that may or may not exist in any case other than those we consider here in Mr. Lugo’s case. I also acknowledge that, despite my best research efforts, my identification of thirty-four capital prisoners may underrepresent the actual number who face AEDPA statute of limitation problems. For example, I did not research now pending state postconviction cases.

.The Majority opinion says "roughly 8%” of the current death row population failed to meet AEDPA’s one-year filing deadline. See Maj. Op. at 1213. This 8% figure is derived by dividing the number of inmates in the appendix (34) by the total number of prisoners currently on death row (397). See Death Row Roster, Fla. Dep't of Corr., http:// www. dc.state.fl.us/activeinmates/deathrowroster. asp (last visited Apr. 23, 2014). I agree that 8% is more than enough to give "cause for concern about the quality of capital collateral representation in some Florida cases.” See Maj. Op. at 1213. However, the 8% number minimizes the scope of the problem for several reasons. First, for the reason I noted, my *1217 identification of thirty-four inmates is probably a low number. Second, taking the percentage of the 34 against all 397 inmates currently on death row is problematic. As the Majority forthrightly acknowledges, "the inmates on any given death row are at various stages of” litigation. Maj. Op. at 1213 n. 15. My information is that dozens of inmates on Florida’s death row were sentenced only in the last two or three years, so their cases are not yet final on direct review. See Death Row Roster. Since those inmates’ one-year deadline has not yet started to run, they should not be included in the estimate of Florida death row inmates with federal statute of limitation problems. A fairer percentage would include only those capital inmates who did file a first § 2254 habeas petition since AEDPA became law, as well as those who could have filed a federal petition but did not. While I do not know what that precise number is, it is probably significantly less than the total number of inmates currently on Florida's death row. For example, the number would be closer to 12%, assuming 273 first § 2254 capital petitions were filed since AEDPA and 34 inmates untimely filed petitions.
Also, I would characterize the problem slightly differently than the Majority to the extent that it identifies this issue as unique to Florida. See Maj. Op. at 1212-13. Certainly Florida is an outlier in missed one-year deadlines by capital defendants in states within the Eleventh Circuit. Florida may well be a stand out even among all states with the death penalty. But it is also true that several Alabama death row inmates have filed untimely habeas petitions. See, e.g., Melson v. Comm’r, Ala. Dep’t of Corr., 713 F.3d 1086 (11th Cir.2013), cert. denied sub nom., Melson v. Thomas, - U.S. -, 134 S.Ct. 905, 187 L.Ed.2d 790 (2014); Myers v. Allen, 420 Fed.Appx. 924 (11th Cir.2011); Arthur v. Allen, 452 F.3d 1234 (11th Cir.2006); Sibley v. Culliver, 377 F.3d 1196 (11th Cir.2004). I understand Alabama to currently have 197 inmates on death row. See Alabama Inmates Currently on Death Row, Ala. Dep't of Corr., http:// www.doc.alabama.gov/DeathRow.aspx (last visited Apr. 23, 2014).

. Of course when a petitioner’s "application for State post-conviction or other collateral review” is filed is important because it tolls the federal statute of limitations period if it is filed before the federal limitations period expires. See 28 U.S.C. § 2244(d)(2); Tinker v. Moore, 255 F.3d 1331, 1333 (11th Cir.2001).

. In any event, potential federal habeas claims are not limited to issues raised in state court postconviction proceedings. Federally-appointed counsel could, for example, timely file a federal petition raising only claims that were raised on direct appeal and/or file a mixed petition and request that his federal petition be held in abeyance. See Rhines v. Weber, 544 U.S. 269, 278, 125 S.Ct. 1528, 1535, 161 L.Ed.2d 440 (2005) ("[lit likely would be an abuse of discretion for a district court to deny a stay and to dismiss a mixed petition if the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics. In such circumstances, the district court should stay, rather than dismiss, the mixed petition.”); see also Hutchinson, 677 F.3d at 1102 & n. 7 (recognizing that a capital habeas petitioner could file a federal place-holder petition that could be held in abeyance until efforts to obtain state collateral review were completed).
Furthermore, federal counsel appointed under § 3599 cannot simply assume that a constitutional claim that was not exhausted in state court will be precluded from merits review in federal court, especially without first investigating the cause for the default and whether the petitioner was prejudiced, or whether some other possibility exists to excuse the procedural default. See, e.g., Martinez, 132 S.Ct. at 1320 ("Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.”).

.The American Bar Association issued a report in 2006 that gives historical context and addresses some of the broader issues concerning the quality of state court-appointed capital collateral counsel in Florida. See Am. Bar Ass'n, Evaluating Fairness and Accuracy in *1222 State Death Penalty Systems: The Florida Death Penalty Assessment Report 236-37 (2006) (discussing and criticizing the qualifications and performance of some of the registry attorneys appointed under Florida’s system for the appointment of post-conviction counsel, including that “registry attorneys in at least twelve separate cases filed their clients' state post-conviction motions or federal habeas corpus petitions between two months to three years after the applicable filing deadline’’).

. Cases are listed alphabetically by the defendant’s last name and included without regard for the merits of the underlying claims for relief. These cases are offered as representative, not exhaustive, examples of cases in which the statutory deadline for filing a habeas petition appears to have been missed.

.Mr. Brown's federal habeas case was dismissed by the District Court because Mr. Brown died while the case was still pending and before the Court had an opportunity to finally rule on his request for equitable tolling. See Brown, No. 8:06-cv-142 (M.D.Fla. Mar. 12, 2007), ECF No. 14 (order dismissing petition because of petitioner's death).

. Mr. Chavez was executed on February 12, 2014.

. I understand that Mr. Gorby died of natural causes while in custody in May 2013.

. Mr. Howell was executed on February 26, 2014.

. Mr. Johnson has two death sentences stemming from two separate state court proceedings involving different victims, but occurring nine days apart. Johnson, 513 F.3d at 1329; see also Johnson v. State, 696 So.2d 317 (Fla.1997); Johnson v. State, 696 So.2d 326 (Fla.1997). He filed a pair of § 2254 federal habeas petitions, one attacking his first death sentence, and the other attacking his second death sentence. Johnson, 513 F.3d at 1329. Both § 2254 petitions were dismissed as untimely. Id.

.The District Court recently denied Mr. Asay’s habeas petition. See Asay v. Sec'y, Fla. Dep’t of Corr., No. 3:05-cv-147 (M.D. Fla. April 14, 2014), ECF No. 152 at 51 (order denying petition and granting certificate of appealability).

. The Clerk of the Florida Supreme Court is required to certify to the governor those individuals on the state’s death row who have (1) completed their direct appeal, state postconviction proceeding, and federal habeas proceeding or (2) “[ajllowed the time permitted for filing a habeas petition in federal court to expire.” Fla. Stat. § 922.052. The purpose of the certification is to facilitate the issuance of warrants of execution. Id. The individual cases listed here are identified in the Clerk’s October 4, 2013 certification letter as having failed to file a federal habeas petition "within the time frame allowed.” Letter from Thomas D. Hall, Clerk, Supreme Court of Florida, to Rick Scott, Florida State Governor (Oct. 4, 2013), available at http://prod-adminl.halifax. atex.cniweb.net:8080/polopoly_fs/1.214714. 138118073 0/menu/standard/file/8appeals.pdf. For each of these defendants, we could find no evidence of any federal habeas petition filed to date. A habeas petition has recently been filed in another case included in the Clerk's letter, Anton Krawczuk v. State, 92 So.3d 195 (Fla.2012), but there has yet to be a determination on timeliness, entitlement to equitable tolling, or the merits. Petition for Writ of Habeas Corpus by a Person in State Custody, Krawczuk v. Crews, No. 2:13-cv-00559 (M.D.Fla. July 18, 2013), ECF No. 1.

. I understand Mr. Bryant died of natural causes on September 19, 2009. Since Mr. Bryant never filed a § 2254 habeas petition, there has not been a determination about whether his petition would have been considered untimely or qualified for equitable tolling. However, as the Attorney General's February 9, 2009 motion to close the case for lack of prosecution alleged, it appears that more than three years of un-tolled time had passed since Mr. Bryant's initial round of state postconviction had become final and no § 2254 federal petition had been filed. Bryant, 9:05-cv-80562 (S.D.Fla. Feb. 23, 2009), ECF No. 23 at 1-3 (noting that Mr. Bryant's case became final on November 13, 2001, when the U.S. Supreme Court denied his petition for certiorari review from his direct appeal, see Bryant v. Florida, 534 U.S. 1025, 122 S.Ct. 557, 151 L.Ed.2d 432 (2001), and the Florida Supreme Court issued its mandate on May 19, 2005 following the denial of state postconviction relief, see Bryant v. State, 901 So.2d 810 (Fla.2005)); see also Nyland v. Moore, 216 F.3d 1264, 1267 (11th Cir.2000) (per curiam) (concluding that, in Florida, properly filed state postconviction motions remain pending for purposes of 28 U.S.C. § 2244(d)(2) until issuance of the state appellate court’s mandate).