Jesse Lyn MILLIRON

v.

DIRECTOR, TDCJ–CID.

CIVIL ACTION NO. 6:13cv324

United States District Court,
E.D. Texas, Tyler Division.

Signed December 15, 2014

Jesse Lyn Milliron, Huntsville, TX, pro se.

Kate E. Walker, Office of the Texas Attorney General, Austin, TX, for Respondent.

*MEMORANDUM ADOPTING REPORT AND RECOMMENDATION OF THE UNITED STATES MAGIS-TRATE JUDGE AND ENTERING FINAL JUDGMENT*

LEONARD DAVIS, UNITED STATES DISTRICT JUDGE

The Petitioner Jesse Milliron, proceeding *pro se*, filed this application for the writ of habeas corpus under 28 U.S.C. § 2254 complaining of the legality of his conviction. This Court ordered that the matter be referred to the United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges.

Milliron was convicted of possession of certain chemicals with intent to manufacture a controlled substance, with two prior felonies alleged for enhancement purposes. He was found guilty by a jury and pleaded true to the enhancements, and received a 40–year sentence.

Milliron's conviction was affirmed on direct appeal on November 3, 2010, and he did not seek discretionary review; instead, he sought state habeas corpus relief on December 13, 2011. This state application was denied without written order on January 23, 2013, and Milliron filed his federal habeas petition on April 6, 2013.

The Respondent has filed an answer arguing that Milliron's petition should be dismissed because of the expiration of the statute of limitations. Milliron filed a reply arguing that the limitations period should be tolled because counsel's misconduct caused him to miss the limitations period. He states that his appointed counsel, Nancy Perkins, did not file a petition for discretionary review or inform him of his constitutional right to pursue matters further. He further says that she did not inform him of the appellate court's decision when it was handed down, but he began to pursue matters with the help of jailhouse lawyers once he learned of it months later.

Milliron maintains that counsel's failure to inform him of the appellate court's decision constituted an impediment created by state action, tolling the commencement of the limitations period, and that he is entitled to equitable tolling as well.

The Respondent argues that Milliron missed the federal limitations deadline by 16 months because his state application was filed after the limitations period had expired. The Respondent stated that Milliron did not show counsel's failure to noti-

fy him was an impediment created by state action and that Milliron failed to show that he had been pursuing his rights diligently, as is required to claim equitable tolling. Milliron argued that he was the victim of "attorney abandonment," citing *Holland v. Florida,* 560 U.S. 631, 130 S.Ct. 2549, 177 L.Ed.2d 130 (2010) and *Maples v. Thomas,* —— U.S. ——, 132 S.Ct. 912, 924, 181 L.Ed.2d 807 (2012), and stated that he acted as diligently as possible once he learned that his conviction had been affirmed on direct appeal.

After review of the pleadings and records, the Magistrate Judge issued a Report recommending that Milliron's petition be dismissed based on the expiration of the statute of limitations. The Magistrate Judge stated first that Milliron's conviction became final on December 3, 2010, and he filed his state habeas petition on December 13, 2011, outside of the limitations period. This state petition thus had no effect on the limitations period, which had already expired by the time it was filed.

The Magistrate Judge then addressed Milliron's tolling arguments. After summarizing *Holland* and *Maples,* as well as a Fifth Circuit decision called *Clarke v. Rader,* 721 F.3d 339, 340 (5th Cir.2013), the Magistrate Judge stated that Perkins' action or inaction could not be a "state-created impediment" to the seeking of habeas corpus relief because Perkins, who was Milliron's court-appointed attorney, is not a state actor. The Supreme Court has held that court-appointed attorneys are not state actors, *see Polk County v. Dodson,* 454 U.S. 312, 317–25, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981), and the Tenth and Eleventh Circuits have held that incompetent performance by court-appointed counsel is not a "state-created impediment" for purposes of the statute of. limitations. *Johnson v. Florida Department of Corrections,* 513 F.3d 1328, 1331 (11th Cir.2008);

*Irons v. Estep,* slip op. no. 051412, 2006 WL 991106 (10th Cir. April 17, 2006).

The Magistrate Judge went on to determine that Milliron was not entitled to equitable tolling because he failed to show that he had acted with reasonable diligence. The record shows that Milliron became aware of problems with Perkins while his direct appeal was still pending; he contacted the State Bar of· Texas about her in July or August of 2010, some three to four months before his appeal was decided. However, he does not allege that he ever contacted the Twelfth Court of Appeals to inquire as to the status of his case, ask that Perkins be removed and another attorney be appointed, or to otherwise express concerns about Perkins' representation of him. Nor does he allege that he contacted the trial court about Perkins.

In *Maples,* the Supreme Court stated that the petitioner "had no reason to suspect" that he had been abandoned by counsel. *Maples,* 132 S.Ct. at 927. Hence, the petitioner in that case had no reason to believe that he should have been doing anything. In *Holland,* the petitioner not only contacted the state bar, as Milliron did, but also wrote twice to the Florida Supreme Court asking that his attorney be removed and wrote several times to the clerk of the Florida Supreme Court asking what was going on in his case. The Magistrate Judge stated that while Holland's actions demonstrated reasonable diligence, Milliron only wrote to the state bar and never contacted the court.

In addition, the Magistrate Judge noted that Holland filed his federal habeas petition on the same day he learned that his state petition had been denied, while Milliron waited nine weeks between the time he learned of the denial of his state habeas petition and the filing of his federal petition. The Magistrate Judge stated that this delay, plus Milliron's lack of diligence

in failing to contact the state courts despite his knowledge of problems with counsel, showed that he did not act with reasonable diligence and thus was not entitled to equitable tolling.

In his objections, Milliron argues that the fact he was experiencing problems communicating with counsel is different from "having confirmation that Perkins abandoned him." He states that "whatever date appears on the State Bar's findings concluding that Perkins' Unprofessional Grievance by Milliron is meritless, is the point notice of abandonment should be triggered." Milliron also contends, for the first time in his objections, that letters which he wrote to his family should be considered "reasonable diligence."

Second, Milliron complains that the Magistrate Judge creates a "bright-line rule" conditioning reasonable diligence on whether or not the claimant contacted court officials, citing *Palacios v. Stephens,* 723 F.3d 600, 606 (5th Cir.2013). He argues that his case is akin to *Maples* and states that the record does not show the date on which the State Bar dismissed his complaint against Perkins or what date Perkins answered the Bar's inquiry about Milliron's complaint against her. He reiterates that he contacted his family repeatedly · about Perkins and again complains that the Magistrate Judge created a "bright line rule."

Milliron states that he could not discover the factual predicates of his claim until he learned that his direct appeal had been affirmed, accessed the law library in his two hours per week of research time, and obtained the tools necessary to prepare dispositive pleadings. He argues that the two months in between his receipt of the denial of his state court petition and his filing of his federal petition is not evidence of delay because there is a plethora of cases holding that a one-to-two month delay in filing a federal petition does not run afoul of diligency standards. Finally, Milliron re-urges his contention that court- · appointed counsel should be considered a state actor for purposes of determining whether counsel's failures can amount to a "state-created impediment" for purposes of the limitations period.

As the Magistrate Judge said, Milliron knew that he was having problems communicating with Perkins even before his direct appeal was decided. He filed a complaint against Perkins with the State Bar of Texas, yet never contacted either the trial court or the appellate court with his concerns about his lawyer or to inquire as to the status of his case. *Compare Holland,* 560 U.S. at 653, 130 S.Ct. at 2565 (noting that Holland not only wrote his attorney numerous letters, but also contacted the state courts, their clerks, and the Florida State Bar Association).

Contrary to Holland's contention, the Magistrate Judge did not "create a bright-line rule," but instead reviewed the totality of the facts and circumstances of this case. These circumstances include, but are not limited to, the fact that unlike the petitioner in *Holland,* Milliron never wrote to the trial court or the appellate court to complain about counsel or to inquire about his case. Instead, he only contacted the State Bar of Texas with a complaint that he concedes the State Bar determined to be unfounded. The Magistrate Judge correctly concluded that under the circumstances of this case, Milliron did not show reasonable diligence so as to be entitled to equitable tolling.

Although Milliron likens his. case to *Maples,* the record in that case showed that the petitioner had no notice whatsoever of his abandonment by counsel; the Supreme Court observed that he "had no reason to suspect that, in reality, he had been reduced to *pro se* status." *Maples,* 132 S.Ct.

at 927. This is a critical distinction; unlike Milliron and Holland, Maples had no reason even to think that he should have been writing letters or contacting the state courts. Milliron's contentions that the limitations period should begin on the date that the State Bar denied his grievance against Perkins, and that his letters to his family are evidence of reasonable diligence, lack merit on their face.

Milliron goes on to argue that the nine-week delay between his learning of the state court's denial of his habeas petition and his filing of the federal petition is not evidence of a lack of diligence, citing *Phillips v. Donnelly*, 216 F.3d 508, 511 (5th Cir.), *modified on other grounds* 223 F.3d 797 (5th Cir.2000) as stating that a one-month delay in filing a federal petition does not preclude equitable tolling. Other evidence in *Phillips* indicated that the petitioner had acted with reasonable diligence; he received notice of the denial of a state habeas corpus petition on August 29, 1997, and filed a motion for an out of time appeal on September 1, 1997, only three days later. One month after the denial of this motion, he filed his federal habeas petition.

In the present case, Milliron does not specifically state when he learned that his conviction had been affirmed on appeal; he says that this affirmance occurred in November of 2010 and he did not learn of it until "months later." He was notified in January of 2011 that Perkins would be required to file a response to his complaint, but he did not file his state habeas petition until December of 2011, almost a full year later. He then filed his federal habeas petition over two months after his state petition was denied. The nine-week delay in the filing of Milliron's federal petition is part of the overall circumstances in the case showing that he failed to act with reasonable diligence. *Sim-mons v. Johnson*, 210 F.3d 368, 2000 WL 293959 (5th Cir., February 17, 2000), *citing Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir.1999) (no abuse of discretion in finding that equitable tolling was not warranted where petitioner waited over a month after receiving notice of the denial of his state petition to seek federal habeas corpus relief); *see Palacios*, 723 F.3d at 606 (stating that "the circumstances of each case, taken together, must determine whether a particular petitioner was diligent in pursuing his claims and therefore entitled to equitable tolling.") Milliron's objections concerning the issue of equitable tolling are without merit.

■ Milliron also repeats his argument that Perkins' conduct should be considered a "state-created impediment" for purposes of 28 U.S.C. § 2244(d)(1)(B). He says that "state action" under 42 U.S.C. § 1983 and a "state-created impediment" under § 2244 are two different things, and states that "a determination should be made as whether or not, like court clerks and appellate court clerks, attorneys' acts / omissions qualify as an impediment pursuant to § 2244(d)(1)(B)." As the Magistrate Judge determined, a court-appointed attorney is not a state actor, meaning that the conduct of the attorney cannot be considered "an impediment to filing an application created by state action." *Watson v. Dretke*, civil action no. 3:04cv721, 2004 WL 1635787 (N.D.Tex., July 21, 2004), *Report adopted at* 2004 WL 1698796 (N.D.Tex., July 28, 2004) (failure of state habeas counsel to advise petitioner of the denial of his state habeas application was not a "state-created impediment"), *citing Egerton v. Cockrell*, 334 F.3d 433, 436 (5th Cir.2003); *see also Johnson v. Florida Department of Corrections*, 513 F.3d 1328, 1331 (11th Cir.2008). Milliron's objections are without merit.

The Court has conducted a careful *de novo* review of the pleadings in the cause, the Report of the Magistrate Judge, and the Petitioner's objections thereto. Upon such *de novo* review, the Court has concluded that the Report of the Magistrate Judge is correct and that the Petitioner's objections are without merit. It is accordingly

ORDERED that the Petitioner's objections are overruled and the Report of the Magistrate Judge (docket no. 31) is ADOPTED as the opinion of the District Court. It is further

ORDERED that the above-styled application for the writ of habeas corpus be and hereby is DISMISSED with prejudice as barred by the statute of limitations. Finally, it is

ORDERED that any and all motions which may be pending in this civil action are hereby DENIED.

**So ORDERED.**

### REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

## K. NICOLE MITCHELL, UNITED STATES MAGISTRATE JUDGE

The Petitioner Jesse Milliron, proceeding *pro se*, filed this application for the writ of habeas corpus under 28 U.S.C. § 2254 complaining of the legality of his conviction. The petition has been referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges.

Milliron was convicted of possession of certain chemicals with intent to manufacture a controlled substance, with two prior felonies alleged for enhancement purposes.

He was found guilty by a jury and pleaded true to the enhancements, and on December 2, 2009, Milliron was sentenced to 40 years in prison.

Milliron's conviction was affirmed by the Twelfth Judicial District Court of Appeals on November 3, 2010. *Milliron v. State,* slip op. no. 12–09–0443–CR, 2010 WL 4346698 (Tex.App.–Tyler, November 3, 2010, no pet.). Milliron did not file a petition for discretionary review. Instead, on December 13, 2011, Milliron filed his state habeas corpus petition. This petition was denied without written order on January 23, 2013. Milliron filed his federal habeas petition on April 6, 2013.

The Respondent was ordered to answer Milliron's petition and filed an answer asserting that the statute of limitations has expired. Milliron filed a reply arguing that the statute of limitations should be tolled because counsel's misconduct caused him to miss the limitations period.

Milliron states that after his conviction was affirmed, his appointed counsel, Nancy Perkins, did not file a petition for discretionary review or inform Milliron of his constitutional right to pursue matters further. He said that he was unaware of the appellate court's decision when it was handed down, but began to pursue matters with the help of jailhouse lawyers once he learned of it.

Milliron states that under Texas law, counsel appointed to handle direct appeals must inform their clients of any decision or opinion rendered, as well as notification of the minimal procedures required to further appeal past the direct appellate decision. However, his attorney did not do either of these things.

After he was taken to prison, Milliron says he was bench warranted on two different occasions to two different counties because of outstanding charges against

him. By mid-May of 2010, he was back in the penitentiary.

On November 3, 2010, the Twelfth Court of Appeals affirmed the lower court's judgment and sentence. The appellate court clerk notified Perkins and the district attorney that the lower court had been affirmed, but Milliron did not get a copy from Perkins or from the court; instead, he learned months later through family and friends that an adverse opinion had been rendered.

Milliron states that Perkins did not file a motion for rehearing or a petition for discretionary review, nor did she inform Milliron that he could pursue his rights on his own or that there were certain procedural mechanisms which had to be followed or such rights would be lost.

Around July or August of 2010, months before the appellate court rendered its decision, Milliron says he wrote to the State Bar of Texas complaining about misconduct by Perkins. Specifically, Milliron complained that Perkins would not respond to his letters and refused to provide him with copies of pertinent documents. In January of 2011, the State Bar notified Milliron that the chief office of the disciplinary counsel had reviewed the grievance and determined that the information Milliron provided alleged professional misconduct. The State Bar further said that counsel would be provided with a copy of the complaint and directed to file a response, of which Milliron would receive a copy.[1]

A month after the appellate court affirmed Milliron's conviction, a copy of the mandate was sent to the Henderson County district clerk's office, but Milliron was not notified of this. He again says that it was several months before he learned that

his conviction had been affirmed, and another two or three months after that before his family and friends began providing him with copies of the appellate record.

On December 13, 2011, Milliron filed his first state habeas petition by placing it in the prison mailbox. The State filed its reply on February 15, 2012. His state petition was denied without written order by the Texas Court of Criminal Appeals on January 23, 2013, and Milliron received notice of this on or around January 28, 2013.

Milliron argues that his attorney's failure to inform him of the appellate court's decision constitutes an impediment to filing created by state action, which tolls the statute of limitations under 28 U.S.C. § 2244(d)(1)(B). He also maintains that he is entitled to equitable tolling of the limitations period.

In support of this contention, Milliron maintains that his legal position mirrors that of the petitioner in *Holland v. Florida*, 560 U.S. 631, 130 S.Ct. 2549, 177 L.Ed.2d 130 (2010), noting that in *Holland*, as in his case, the petitioner filed a complaint with the State Bar Association. Milliron asks that the Court subpoena the prison's incoming and outgoing legal mail logs as well as the investigative files of the State Bar, which he says will show his communications with the State Bar concerning Perkins.

*The Respondent's Further Response*

After review of Milliron's pleadings, this Court ordered the Respondent to file a further response addressing Milliron's contentions. The Respondent states first that Milliron missed the filing deadline for his federal habeas petition by 16 months because his state habeas petition was filed

---

**1.** Milliron does not indicate the result of the bar grievance he filed; State Bar records

show that no disciplinary action has been taken against Perkins in the past 10 years.

outside the federal limitations period and thus did not toll any portion of that period.

Next, the Respondent asserts that Milliron has not shown that any unconstitutional state action caused an impediment to his filing a federal habeas corpus petition, stating that "Milliron offers nothing more than a conclusory allegation that his counsel's alleged failure to notify him constitutes an impediment." In addition, the Respondent contends that Milliron fails to establish that the alleged failure by counsel to notify him amounts to "state action," and that even if it did, there was no evidence to suggest that the error prevented Milliron from filing his federal petition.

The Respondent acknowledges that "attorney abandonment" can qualify as an extraordinary circumstance for equitable tolling purposes, but states that mere attorney negligence, including miscalculations causing a lawyer to miss a filing deadline, does not warrant equitable tolling.

In any event, the Respondent says, even complete attorney abandonment does not do away with the petitioner's duty to exercise reasonable diligence; in other words, petitioners seeking to invoke equitable tolling must exercise diligence even when they receive inadequate legal representation.

Regarding the present case, the Respondent argues that the record is "inconclusive" as to whether Milliron received notice of the appellate court's decision, but says that even if counsel failed to notify him of this decision, Milliron has not demonstrated that he was diligent in pursuing his rights and that extraordinary circumstances prevented him from doing so. In *Adams v. Thaler*, civil action no. H–13–0473, 2013 WL 3049356 (S.D.Tex., June 17, 2013), the Southern District held that an appellate counsel's failure to inform his client about the status of his case is not an extraordinary circumstance which would prevent him from filing a timely habeas petition, and even if the attorney misinformed the petitioner about his case, the petitioner must nonetheless be diligent in verifying the record. Although long delays in notice of state court action may warrant equitable tolling, a petitioner must show that he pursued the relief process with "diligence and alacrity," including inquiring as to the status of his petition, both before and after receiving notification. The Respondent argues that there is no evidence that Milliron ever sought to contact the appellate court directly to inquire about his case.

Furthermore, the Respondent states that Milliron became aware of his counsel's alleged failure to communicate by January 7, 2011, but waited until December of 2011, almost a full year later, to file his state writ application. Milliron could have sought permission to file an out-of-time petition for discretionary review based on counsel's alleged dereliction, which, if granted, would have reset the clock on the limitations period. Hence, the Respondent urges that Milliron was not diligent in pursuing relief and his petition should be dismissed as untimely.

### Milliron's Reply

In his reply to the supplemental response, Milliron again states that counsel failed to notify him of the affirmance of his conviction or of his post-affirmance rights. He filed a state habeas petition some ten days after his limitations period expired, and then sought federal habeas relief two months after his state petition was denied.

Milliron asserts that he was denied the opportunity to seek discretionary review because appellate counsel completely abandoned him. This abandonment amounted to ineffective assistance of counsel which should warrant equitable tolling.

Milliron contends that attorneys, like judges, are "officers of the court," making his attorney a state actor. He says that there is some evidence that he pursued a state bar complaint against Perkins. The record shows who received notice of the affirmance of his conviction, and Perkins should have provided Milliron and the appellate court clerk with notice that Milliron had been sent a copy of the opinion. He again requests that the Court subpoena the prison mail logs and the state bar grievance records.

Under the Texas Rules of Appellate Procedure, Milliron states that Perkins was required to send him a copy of the affirmance within five days and notify him of his right to file a petition for discretionary review *pro se*, as well as furnish the appellate court clerk with a copy of the receipt showing that Perkins had been sent a copy of the opinion.

Milliron asserts that in *Holland*, the Supreme Court found that the one-year deadline for filing a federal habeas petition can be tolled for equitable reasons, and an attorney's unprofessional conduct can amount to extraordinary circumstances. While negligence is not such a circumstance, attorney abandonment can be. He points to Justice Alito's concurring opinion, which stated that abandonment evidenced by counsel's near-total failure to communicate with his client would suffice to establish extraordinary circumstances because a litigant cannot be held constructively responsible for the conduct of an attorney who is not acting as his agent in any meaningful sense of the word. Similarly, Milliron states that in *Maples v. Thomas,* —— U.S. ——, 132 S.Ct. 912, 924, 181 L.Ed.2d 807 (2012), the Supreme Court again drew a distinction between attorney negligence and complete abandonment.

Milliron takes issue with the Respondent's contention that his attorney is not a state actor, pointing to the Texas Disciplinary Rules of Professional Conduct's statement that a lawyer is an officer of the legal system. He points out that Perkins was appointed to represent him and was paid by the State for doing so, and that the error of which he complains occurred during the direct review process, not on collateral review.

After reiterating that the appellate court sent notice of its decision to his attorney, not to him, Milliron contends that the Respondent misses the point by arguing that Milliron did not attempt to contact the appellate court directly; rather, the thrust of Milliron's claims is that Perkins completely abandoned him. He says that in *Maples,* the Supreme Court held that a client could not be faulted for failing to act on his own behalf when he lacked reason to believe that his attorneys of record are not representing him. The January 7, 2011 letter to which the Respondent referred merely informed Milliron that the attorney would be required to answer his complaint; this letter was after Milliron's conviction had already been affirmed, but counsel never filed a motion to withdraw or notify Milliron whether or not he was still being represented.

Although the Respondent contended that Milliron was not diligent in pursuing relief, Milliron maintains that he could not have discovered the factual predicates of his habeas claim until he learned that his direct appeal had been affirmed, accessed the law library in the prison in the two hours a week he was allowed, and obtained the tools needed to prepare his pleadings. He asks that his petition be allowed to go forward and for a hearing and appointment of counsel.

*Legal Standards and Analysis*

*The Law on Limitations*

The Respondent argues that Milliron's petition is barred by the statute of limita-

tions. This statute, set out in 28 U.S.C. § 2244(d), reads as follows:

(1) A 1–year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of–

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

■ This statute was enacted as part of the Anti–Terrorism and Effective Death Penalty Act on April 24, 1996. In this case, Milliron's conviction was affirmed by the Twelfth Judicial District Court of Appeals on November 3, 2010, and he did not file a petition for discretionary review.

This means that his conviction became final at the expiration of the time to do so, on December 3, 2010. His limitations period began to run at that time and expired on December 3, 2011, absent the operation of other factors.

■ Milliron's state habeas corpus petition was filed on December 13, 2011, which was after the limitations period expired. The Fifth Circuit has held that a state habeas corpus petition filed after the limitations period has expired does not revive any part of this period. *Villegas v. Johnson*, 184 F.3d 467, 472 (5th Cir.1999) (expired limitations period cannot be revived by filing a state habeas petition). Milliron's state habeas petition thus had no effect upon the limitations period, which expired December 3, 2011.

However, Milliron argues that he faced a state-created impediment in the form of Perkins' failure to inform him of the appellate court's action, which entitles him to statutory tolling of the limitations period. He also contends that he is entitled to equitable tolling. The issue of tolling is the question presently before the Court.

*The Relevant Caselaw*

*A. Holland v. Florida*

In *Holland*, the Supreme Court reaffirmed that the statute of limitations was subject to equitable tolling and stated that some professional misconduct by counsel could amount to egregious behavior warranting such tolling. The Supreme Court reaffirmed that "garden variety claims of excusable neglect," such as a miscalculation which causes a lawyer to miss a filing deadline, does not warrant equitable tolling, but the facts of Holland's case went beyond that; Holland's attorney, Collins, did not file a petition on time despite Holland's repeated letters asking that he do so, failed to perform research to ascertain the correct filing date, despite Holland's

letters pointing out the applicable rules, did not tell Holland of the "crucial fact" that the Florida Supreme Court had decided his case, and did not communicate with Holland over a period of several years.

The Supreme Court concluded that Holland had acted with reasonable diligence, noting that he wrote his attorney numerous letters, wrote to the state courts, their clerks, and the Florida Bar Association, and prepared and filed a *pro se* habeas petition the very day that he learned that the statute of limitations had expired. Based on the facts of the case, the Supreme Court reversed the lower courts' dismissal of Holland's petition; however, the Supreme Court did not specifically hold that equitable tolling applied, instead remanding the case to the lower courts to make that determination.

### B. Clarke v. Rader

The Fifth Circuit addressed a similar issue in *Clarke v. Rader*, 721 F.3d 339, 340 (5th Cir.2013). In that case, the petitioner Paul Clarke never received notice of action taken by the Louisiana Supreme Court on his writ application, which the court denied on January 29, 2010. The next month, he contacted counsel to ask about the application, and counsel discovered from the court website that the application had been denied. Counsel notified Clarke of the denial that same month, apparently around February 17, 2010; Clarke filed his federal habeas petition on April 30, 2010.

The district court denied the petition based on the expiration of the statute of limitations. On appeal, the Fifth Circuit expressed doubt that the failure to notify Clarke provided a basis for statutory (as opposed to equitable) tolling of the limitations period. Furthermore, the Fifth Circuit said, Clarke was not entitled to statutory tolling under the facts of the case. He received notice of the denial by the Louisiana Supreme Court in February of 2010, and had he filed his federal petition that month, it would have been timely. Instead, he waited until April, after the limitations period had expired. Clarke apparently believed, in error, that he had until May 2010 to file, and it was this error, rather than any state action, which caused him to miss his deadline.

Turning to the issue of equitable tolling, the Fifth Circuit noted that such tolling applies principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights. The plaintiff must show that he pursued his rights diligently and that an extraordinary circumstance stood in his way and prevented timely filing. A "garden variety claim" of excusable neglect, such as a simple miscalculation that leads a lawyer to miss a filing deadline does not qualify, nor would a delay of the petitioner's own making.

Clarke argued that the State's failure to notify him of the Louisiana Supreme Court's decision was an exceptional circumstance and that he had diligently pursued his rights, but the district court disagreed. On appeal, the Fifth Circuit held that the district court's action was not an abuse of discretion. While acknowledging that long delays in receiving notice of state court action would warrant equitable tolling, citing *Hardy v. Quarterman*, 577 F.3d 596, 598 (5th Cir.2009), the Fifth Circuit observed that less than a month elapsed between the date of the Louisiana Supreme Court's decision and the date Clarke received notice of this decision. In addition, there was no evidence that this delay contributed to Clark's untimely filing; rather, this delay appeared to have come from Clarke's erroneous belief that

he had until May to file his federal petition.[2]

### C. Maples v. Thomas

Milliron cites this case in support of his claim of "attorney abandonment." In the convoluted facts of that case, two New York attorneys from the law firm of Sullivan & Cromwell, named Jaasi Munanka and Clara Ingen–Housz, took on representation of an Alabama death row inmate, Cory Maples. They filed an application for post-conviction relief, known as a "Rule 32 application." While this application was pending, however, both attorneys left the law firm and took on other employment which precluded their representation of Maples. Neither attorney filed a motion for leave to withdraw from the case or otherwise inform the court, nor did they notify their client that they were terminating their representation of him. No other attorney from the law firm entered an appearance on Maples' behalf, moved to substitute counsel, or otherwise notified the court of any change in Maples' representation. Munanka and Ingen–Housz remained on the docket as Maples' counsel of record, along with local counsel John Butler; however, Butler had notified the Munanka and Ingen–Housz that he did not have the time or resources to participate in the case and that his only role in the case would be to get them admitted to practice in Alabama *pro hac vice.*

Some nine months after Munanka and Ingen–Housz left Sullivan & Cromwell, the trial court denied Maples' Rule 32 motion. Copies of this order were sent to Maples' attorneys of record; however, the copies sent to Sullivan & Cromwell were not forwarded to another attorney in the firm, but were returned to the court stamped "returned to sender, attempted, unknown." Butler also received a copy of the order but took no action, assuming that Munanka and Ingen–Housz would take care of filing an appeal. Maples' time to appeal expired on July 7, 2003.

On August 13, 2003, the Alabama assistant attorney general representing the State sent a letter directly to Maples, informing him of the missed deadline and telling him that he had four weeks remaining in which to seek federal habeas corpus. This letter was sent only to Maples, not his counsel of record.

When Maples got the letter, he contacted his mother, who called Sullivan & Cromwell. Prompted by this call, three other attorneys from the firm filed a motion, through Butler, asking the court to reissue the order denying the petition, thus re-starting the appeal clock. The trial court denied the motion, stating that Munanka and Ingen–Housz had not withdrawn from the case and thus were still counsel of record. The trial court noted that the three Sullivan & Cromwell attorneys who had filed the motion were not admitted to practice in Alabama and had not entered appearances as attorneys of record. The court declined to blame its clerk for the missed notice of appeal dead-

---

**2.** In *Hardy,* the petitioner did not receive notice of the Texas Court of Criminal Appeals' decision until almost a year later. When considering the diligence of the petitioner's actions, the Fifth Circuit pointed to *Lewis· v. Cockrell,* 275 F.3d 46, 2001 WL 1267701 (5th Cir., October 15, 2001), and *Coker v. Quarterman,* 270 Fed.Appx. 305, 2008 WL 724042 (5th Cir., March 17, 2008). The petitioner in *Lewis* waited some two and a half years to inquire into the status of his state habeas petition, which was determined not to be diligent, while the petitioner in *Coker* waited eight months to inquire, and then sent a second inquiry a year later, which was determined to be diligent. *Hardy* waited some eleven months before contacting the trial court, and this was also determined to be diligent. *Hardy,* 577 F.3d at 599–600.

line and stated that it was "unwilling to enter into subterfuge to gloss over mistakes made by counsel for the petitioner."

After unsuccessfully seeking mandamus from the Alabama Supreme Court, Maples sought federal habeas corpus review. The State argued that Maples had forfeited his ineffective assistance of trial counsel claims because he failed to appeal from the trial court's denial of his Rule 32 petition, and this procedural default precluded consideration of his claims. Maples replied that the default should be excused because he had missed the appeal deadline through no fault of his own. The federal district court concluded that Maples had defaulted his ineffective assistance claims and had not shown cause sufficient to overcome this default, and the Eleventh Circuit agreed.

On certiorari review, the Supreme Court stated that as a general rule, negligence on the part of post-conviction counsel does not qualify as "cause," because the attorney is the agent of his client and principals bear the risk of negligent conduct by their agents. Thus, if counsel misses a filing deadline, the petitioner is bound thereby and cannot rely on it to establish cause.

However, a different circumstance is presented when an attorney abandons his client without notice and thereby occasions the default. This effectively severs the attorney-client relationship and means that the attorney no longer acts, or fails to act, as the client's representative. The question thus became whether Maples' attorneys had in fact abandoned him.

The Supreme Court stated that from the time he filed his Rule 32 petition until well after the time to appeal expired, Maples had only three attorneys—Munanka, Ingen–Housz, and Butler. Unknown to Maples, not one of these persons was actually serving as his attorney during the 42 days permitted for an appeal from the trial court's order; Munanka and Ingen–Housz had severed their agency relationship with Maples long before the default occurred.

Maples' local counsel, Butler, also left him abandoned. He had told Munanka and Ingen–Housz that he would serve only for the purpose of enabling them to appear *pro hac vice* and that he lacked the resources, time, and experience to deal with substantive issues in the case. After Butler received a copy of the order denying Maples' Rule 32 motion, he did not contact Sullivan & Cromwell to make sure they were taking appropriate action. The Supreme Court observed that when the Alabama assistant attorney general wrote to Maples, he must have believed that Maples was not represented by any attorney, inasmuch as Alabama rules of professional conduct prohibit direct contact with an opposing party known to be represented by counsel. The Supreme Court concluded by stating that

> In the unusual circumstances of this case, principles of agency law and fundamental fairness point to the same conclusion: There was indeed cause to excuse Maples' procedural default. Through no fault of his own, Maples lacked the assistance of any authorized attorney during the 42 days Alabama allows for noticing an appeal from a trial court's denial of postconviction relief. As just observed, he had no reason to suspect that, in reality, he had been reduced to *pro se* status. Maples was disarmed by extraordinary circumstances quite beyond his control. He has shown ample cause, we hold, to excuse the procedural default into which he was trapped when counsel of record abandoned him without a word of warning.

### Summary of the Time Line

Repeated for convenience, the timeline of Milliron's case is as follows:

December 2, 2009 Milliron was convicted in the trial court.

July or August, 2010 Milliron begins writing to the State Bar of Texas complaining about counsel's misconduct.

November 3, 2010 Milliron's direct appeal was affirmed by the Twelfth Judicial District Court of Appeals. No petition for discretionary review was filed. Milliron states, and the Court assumes as true, that Perkins did not send Milliron a copy of the order and he did not learn of it until "months later."

January 7, 2011 State Bar of Texas notifies Milliron that counsel will be required to file a response to his complaint.

December 13, 2011 State habeas petition filed.

January 23, 2013 State habeas petition denied.

April 6, 2013 Federal habeas petition filed.

### Milliron's Claims

#### I. Statutory Tolling

 Milliron first contends that he is entitled to statutory tolling under 28 U.S.C. § 2244(d)(1)(B), asserting that counsel's failure to notify him amounts to an "impediment created by state action." However, this argument founders on the shoals of the fact that court-appointed attorneys are not state actors. *Polk County v. Dodson,* 454 U.S. 312, 317–25, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981). The Tenth and Eleventh Circuits have stated that incompetent performance by appointed counsel is not the type of State impediment envisioned in 28 U.S.C. § 2244(d)(1)(B). *Johnson v. Florida Department of Corrections,* 513 F.3d 1328, 1331 (11th Cir.2008), *citing Lawrence v. Florida,* 421 F.3d 1221, 1226 (11th Cir. 2005), *aff'd* 549 U.S. 327, 127 S.Ct. 1079,

166 L.Ed.2d 924 (2007); *Irons v. Estep,* slip op. no. 05–1412, 2006 WL 991106 (10th Cir., April 17, 2006) (citing *Polk County* ). *See also Barnes v. Chester,* civil action no. CIV–12–48–R, 2012 WL 1836279 (W.D.Okla., May 21, 2012) (citing *Polk County* in holding that "counsel's alleged misinformation was not an impediment created by state action, even though counsel was court-appointed").

Milliron argues that Perkins was a state actor because she was court-appointed and paid by state funds. He also notes that the Texas Rules of Professional Conduct provide that an attorney is an officer of the legal system. Essentially the same contentions were rejected by the Supreme Court in *Polk County.* Because Perkins was not a state actor, any failure by her was not an "impediment created by state action." 28 U.S.C. § 2244(d)(1)(B) thus does not apply, and Milliron's claim for statutory tolling is without merit.

#### II. Equitable Tolling

 Milliron also argues that he is entitled to equitable tolling of the statute of limitations. The Supreme Court has explained that the relevant questions for equitable tolling are whether the petitioner has been pursuing his rights diligently and whether some extraordinary circumstance stood in his way. *Holland,* 130 S.Ct. at 2562. The Court will take Milliron's assertions about his attorney's failure to communicate with him and the fact that he filed a bar grievance on her as true, and assume *arguendo* that Milliron has shown an extraordinary circumstance through his attorney's lack of communication; the question thus becomes whether Milliron himself exercised reasonable diligence in pursuing his rights.

 In this case, the record shows that Milliron became aware of problems with

Perkins while his direct appeal was still pending; he contacted the State Bar of Texas in July or August of 2010, some three to four months before the appellate court rendered its decision in his case. However, Milliron does not allege that he ever contacted the Twelfth Court of Appeals, either to inquire as to the status of his case, to request that Perkins be removed and another attorney appointed, or to otherwise express concerns about Perkins' representation of him. Nor does he allege that he contacted the trial court to express concerns about Perkins. The Fifth Circuit has stated that while attorney abandonment can qualify as an extraordinary circumstance for purposes of equitable tolling, it does not by itself excuse the petitioner from his duty of diligence. *Manning v. Epps*, 688 F.3d 177, 184 n. 2 (5th Cir.2012). Simply writing to the State Bar and filing a complaint, without ever making an effort to contact the court, does not constitute "reasonable diligence" for purposes of equitable tolling. *See generally Lewis*, 275 F.3d 46, 2001 WL 1267701 at *3 (writing his attorney two and a half years later to inquire into the status of a petition for discretionary review was not reasonable diligence); *compare Hardy*, 577 F.3d at 598–99 (inmate who filed state habeas petition in October of 2006, contacted the trial court about its status in September of 2007, and contacted the Court of Criminal Appeals in November of 2007 after hearing nothing from the trial court acted with reasonable diligence); *Coker*, 270 Fed.Appx. at 310 (petitioner who wrote to the Court of Criminal Appeals eight months after his state habeas petition was filed, and then again a year later, exercised reasonable diligence).

Although Milliron relies heavily on *Maples*, that case offers him no basis for relief. The Supreme Court observed that Maples "had no reason to suspect" that he had been abandoned by counsel. *Maples*, 132 S.Ct. at 927. Thus, Maples had no reason to believe that he should be doing anything. Milliron knew that he had a problem with Perkins at least two months before his initial appeal was even decided, but his writing to the State Bar was not a substitute for contacting the appellate court to learn what was happening with his appeal.

Milliron notes that Holland contacted the State Bar, just as he did, but the Supreme Court's decision reflects that Holland also wrote twice to the Florida Supreme Court asking that his lawyer be removed and wrote several times to the clerk of the Florida Supreme Court asking what was happening in his case. These actions demonstrated that Holland acted with reasonable diligence; by contrast, Milliron only contacted the state bar and does not allege that he ever wrote to the appellate court or to the trial court, despite his knowledge of problems with counsel even while his direct appeal was still pending.

Furthermore, Holland filed his federal habeas petition on the same day he learned that his state petition had been denied, while Milliron waited some nine weeks; he states that he learned of the denial of his state habeas petition around January 28, 2013, but he did not sign his federal habeas petition until April 6, 2013. The delay in the filing of Milliron's federal petition weighs against a finding that he acted with reasonable diligence.

In *Simmons v. Johnson*, 210 F.3d 368, 2000 WL 293959 (5th Cir., February 17, 2000), the Fifth Circuit explained that equitable tolling requires a showing that the applicant diligently pursued § 2254 relief, and stated that

Simmons waited more than one month after he allegedly received notice of the denial of his state post-conviction appli-

cation to file the instant § 2254 petition. Under these circumstances, it was not an abuse of discretion for the district court to find that equitable tolling was not warranted. *See Ott v. Johnson,* 192 F.3d 510, 513 (5th Cir.1999). Accordingly, the judgment of the district court is AFFIRMED.

*See also Melancon v. Kaylo,* 259 F.3d 401, 408 (5th Cir.2001) (four-month delay in filing federal habeas petition after Louisiana Supreme Court denied his petition for state post-conviction review was not "expedient" and indicated that the petitioner did not diligently pursue his rights); *compare Phillips v. Donnelly,* 216 F.3d 508, 511 (5th Cir.), *modified on other grounds on rehearing* 223 F.3d 797 (5th Cir.2000) (one-month delay in filing federal habeas petition does not preclude equitable tolling).

In this case, Milliron waited over two months after receiving notice of the denial of his state petition in which to file his federal petition. This delay, plus Milliron's lack of diligence in failing to contact the state courts despite his knowledge of problems with counsel while his direct appeal was pending, renders Milliron's claim for equitable tolling without merit. In addition, as the Respondent observes, Milliron could have sought permission to file an out-of-time petition for discretionary review based on counsel's failure to notify him, which if granted would have re-started the limitations clock. Because Milliron has not shown a valid basis upon which to toll the limitations period, the Respondent is correct in arguing that this period has expired. Milliron's federal habeas corpus petition should be dismissed based upon the limitations bar.

### RECOMMENDATION

It is accordingly recommended that the above-styled consolidated application for the writ of habeas corpus be dismissed with prejudice as barred by the statute of limitations. 28 U.S.C. § 2244(d).

A party's failure to file objections to the findings, conclusions, and recommendations contained in this Report within 14 days after service with a copy thereof shall bar that party from *de novo* review by the district judge of those findings, conclusions, and recommendations and, except upon grounds of plain error, from appellate review of the unobjected-to factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Services Automobile Association,* 79 F.3d 1415, 1430 (5th Cir.1996) (*en banc*).

So ORDERED and SIGNED this 28th day of July, 2014.